## SLOAN v. GIBBES.

1. PLEADING—COMPLAINT—PAROL AGREEMENT—INDORSER—SURETY.— The complaint sufficiently alleges a cause of action by one indorser against another on parol agreement making all indorsers liable as cosureties. *Black* v. *Columbia*, 19 S. C., 419, *distinguished from this.*

2. EVIDENCE—INDORSERS—SURETY—NOTES.—PAROL EVIDENCE is admissible to show that indorsers in blank of a promissory note agreed

that the liability should be that of cosureties and not of successive sureties.

3. Indorsers—Surety.—Finding of Fact by Circuit Judge that note was indorsed under agreement that indorsers should be cosureties, sustained.

4. Notes—Indorser—Payment.—When a bank accepts in payment of a note the individual note of an indorser secured by mortgage, such indorser occupies the position of one who has paid the note.

5. Surety—Contribution.—When a surety liable to contribution is insolvent, the rule is that contribution must be in proportion to the number of solvent sureties.

6. Notes—Indorser—Banks—Contribution—Defense.—Protest may be verbally waived. The defense of failure of bank to protest a note ought not to avail an indorser in an action on a special agreement for contribution as cosurety.

7. Interest—Indorser—Contribution.—In an action by one indorser against another for contribution as cosurety under parol agreement, seven per cent. interest only can be collected, although plaintiff has paid eight per cent.

Before Watts, J., Richland, May, 1899.    Modified.

Action by John T. Sloan against W. H. Gibbes on the following complaint:

1. That on the 23d day of October, 1891, the defendant, W. H. Gibbes, then president of a corporation known as the Richland Wine Company, requested plaintiff, a director in said company, to sign a note for $1,500, to close up an over-draft in the Central National Bank of Columbia, S. C., stating that the defendant and other directors would also sign it, the understanding between plaintiff and defendant being that all the directors so signing would be sureties on said note, each liable, as among themselves, for his proportion of this indebtedness, so that every solvent surety would pay his proportion as between the solvent sureties of the balance due after crediting on said note all payments made by the principal debtors or others.

2. That in pursuance of such agreement and arrangement, a note was thereupon made and executed as follows: Columbia, S. C., 23 October, 1891.   Six months after date

31—56

the Richland Wine Co. promises to pay to John T. Sloan, Jr., or order $1,500, value received. (Signed) Richland Wine Co., W. H. Gibbes, Pres. Indorsed: John T. Sloan, Jr., W. H. Gibbes, E. R. Arthur. And this note was discounted by the Central National Bank and applied to said overdraft.

3. That in renewal of said note, the following note was made and delivered, to wit: Columbia, S. C., 5 July, 1892. Ninety days after date the Richland Wine Co. promises to pay to John T. Sloan, Jr., or order $1,556.40, value received. (Signed) Richland Wine Co., W. H. Gibbes, Pres. Indorsed: John T. Sloan, Jr., W. H. Gibbes, E. R. Arthur. And the signature to said original and renewal notes was made by W. H. Gibbes, the president of said corporation, and the names signed on the back thereof were written respectively by John T. Sloan, Jr. (who is the plaintiff in this action), by W. H. Gibbes (who is the defendant in this action), and by E. R. Arthur.

4. That on or about November 1, 1897, this plaintiff was required and compelled to pay to said Central National Bank the said sum of $1,556.40, with interest thereon at eight per cent. per annum from October 6, 1892, until the day of payment.

5. That the said E. R. Arthur died intestate and probably insolvent in January last, and his estate is now being administered and settled up in the Court of Common Pleas for said county.

6. That plaintiff has demanded contribution from the defendant for the amount so paid by this plaintiff on account of their joint liability on said notes, but defendant refuses to pay any sum whatever on such, his indebtedness.

Wherefore, plaintiff demands judgment, that inquiry be made as to the liability of defendant to plaintiff by reason of the matters and things hereinbefore stated, and that defendant be decreed to pay the amount of such liability to this plaintiff, by way of contribution, and that plaintiff have such other and further relief as may be just.

From Circuit decree in favor of plaintiff, defendant appeals.

*Messrs. Leroy F. Youmans* and *Jno. P. Thomas, Jr.,* for appellant, cite: *Complaint states no contract:* 19 S. C., 419; 1 McC., 209; 1 Johns, 140, 418; 5 Strob., 18; 2 Speer, 628; 4 McC., 439. *Insolvency of principal should have been alleged:* 3 Litt., Ky., 385; 2 Dana, Ky., 296; 7 Dana, Ky., 307; 1 T. B. Mon., Ky., 46; 2 B. Mon., Ky., 348; 1 Dud., Ky., 220; 1 DeS., 409; 20 Miss., 73; 3 Mumf., Va., 484; 2 Iredell Eq., 249; 3 Iredell Eq., 386; 1 McC. Ch., 303. *Creditor is also necessary party:* 2 Rich. Eq., 23. *Personal representative of deceased indorser is necessary party:* 2 Rich. Eq., 19; 1 Met., 387; 15 Ill., 159; 76 Ill., 342; 17 Mass., 464; 8 N. H., 389; 19 N. J. L., 181; 3 Denio, 61; 84 N. Y., 363; 73 N. C., 391; 87 N. C., 294; 13 S. & R., 441; 1 DeS., 409; 7 Bax., 119; 62 Tex., 143. *Liability to contribution among cosureties may be qualified by contract:* 1 Cox, 318; 1 Ch. Rep., 149; 1 Strob., 412. *But express contract excludes an implied one:*· 1 Strob., 412; 1 Rich. Eq., 178; 2 Broch. C. C. R., 159; 9 Wheat., 702. *Notice of default is necessary to charge indorser:* Harp., 269; 1 Bail., 458, 485. *Renewal of note rescinds old contract:* 1 McC., 354; 3 McC., 526; 2 Hill, 484; 8 Rich., 275; 10 Yerg., 429; 10 Hump., 410; 10 S. & R., 75; 4 Pick., 466; 2 Metc., 157; 124 Ill., 214. *Indorsers are not cosureties, and such agreement cannot be shown by parol:* 2 Speer, 628; 43 N. J. L., 279; 61 Ind., 52; 13 S. C., 341; 1 McC. Ch., 490; 1 Johns Ch., 282, 415, 429; 6 Ves., 328; 1 Strob., 412; 2 Mill, 268. *Statute of frauds fatal to the action:* 1 Speer, 7; 2 McM., 372; 2 Speer, 286; 1 Rich., 225; 3 Hill, 44; 1 McC., 100; 4 Strob., 436; 4 McC., 409; 1 Strob., 5; 2 Mill, 113; 4 S. C., 105; 1·Hilton, N. Y., 209; 1 L. R. C. P., 163; 16 C. B. N. S., 350. *Plaintiff must have paid the debt:* 66 N. Y., 255. *Voluntary payment will not do:* 3 Denio, 66; 86 Pa., 409; 56 Vt., 324; 39 Ms. C., 463; 8 M. & W., 538; 67 Conn., 147; 83 Ky., 49; 18 Mo. App., 340; 1 Strob., 270; 3 Strob.,

533; 5 Strob., 146; 55 Cal., 106. *Payment must have been actual:* 14 S. C., 76; 1 Hill, 234; 12 Gratt., 642; 3 Fos., 555; 19 Ala., 798; 6 Rich., 279; 10 Rich. Eq., 143. *No consideration alleged for other liability than that of record indorser:* 47 S. C., 182; 23 S. C., 591; 12 Wheat., 558; 6 How., 283; 13 S. C., 332; 9 Wend., 273; 3 McC., 472. *Statement of plaintiff as to what he would have done if he had known there were only two indorsers, cannot affect this case:* 55 S. C., 579. *Letter of defendant inadmissible:* 1 Rich., 13. *Creditor prejudicing sureties right, cannot recover against him:* 7 E. & B., 430; 6 DeG. M. & G., 677; 2 Camp., 185; 1 Buck., 171; 26 Vt., 19; 3 Strob. Eq., 65; 1 B. & P., 419; 7 Johns, 340. *Surety may lose right of contribution of cosurety:* 58 Ark., 580; 90 Va., 653; 2 DeS., 546. *Evidence of contract sought to be set up must be clear and convincing:* 3 Rich. Eq., 153; 4 Kent, 142; 11 Rich., Eq., 582; 12 How., 139; 1 How., 126; 55 S. C., 524; 52 S. C., 55; 6 S. C., 143; 109 U. S., 288; 23 S. C., 597; 61 Ind., 52; 10 Rich., 177. *Interpretation which all parties gave to contract is of great weight:* 2 Wall., 737; 9 Wall., 54; 10 Wall., 377; 11 Wall., 576; 1 Com., 102; 1 Sumner, 502; 22 E. C. L., 313; 1 Barb., 635; 2 DeS., 546; 1 Mc. Ch., 452. *Findings below are against preponderance of testimony, and must be reversed:* 55 S. C., 198.

*Mr. R. W. Shand,* contra, cites: *Can relationship of the parties to a promissory note be shown by parol evidence?* 1 McC. Ch., 451; 20 L. R. A., 712; 2 Bail., 107; 66 Penn. St., 481; 54 Me., 48; 7 Cush., 404; 43 Ind., 131. *Court will decree contribution:* 1 Rich., 10; 10 Rich., 177. *At law contribution is prorated:* 5 Strob., 15; *but in equity it is equalized between solvent cosureties:* 9 L. R. A., 411; 2 Rich. Eq., 15. *Payment by note secured by mortgage is sufficient payment:* 16 S. C., 214. *Agreement that all should indorse, makes those who did indorse cosureties:* 2 Mack., 427. *No error to recall witness to redeny statements:* 54 S. C., 339.

*Failure of bank to notify Gibbes of default cannot impair rights of Sloan:* McM. Eq., 414.

·March 5, 1900.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   In this case a first indorser in blank on a negotiable promissory note sues the second indorser for contribution, relying upon a alleged parol agreement, by which the indorsers, as among themselves, were to be liable jointly or as cosureties.   The Circuit Court decreed for contribution, and defendant seeks to reverse on numerous exceptions.   These we will not notice in detail, but will consider the principal and controlling questions raised by them.

1. The demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, was properly overruled.   The objection to the complaint was that it failed to allege any contract between plaintiff and defendant, and failed to state any facts from which any liability of defendant to plaintiff arises.

A reference to the complaint, which is reported herewith, will show that the objection is not well founded.   It appears that an agreement to contribute is alleged with sufficient certainty and definiteness to avoid the demurrer. While in the case of *Black* v. *Columbia*, 19 S. C., 419, the Court, speaking of an allegation of an "understanding," said such word was equivocal, or fell short of alleging a distinct and express contract, it must be observed that the Court was speaking in reference to the complaint in that case, which alleged the plaintiff's "understanding."   In this case, "the understanding between plaintiff and defendant" is alleged, and this understanding is subsequently in the same cause of action referred to as an "agreement and understanding." These allegations, with the other facts stated, were sufficient to disclose to the defendant the precise nature of the cause of action he was to meet.

2. There was no error in admitting parol evidence to show the alleged agreement.·  The admissibility of the testimony

is opposed by the appellant on two grounds: (1) that it is contrary to the statute of frauds, requiring an agreement in writing to show a promise to answer for the debt, &c., of another, and (2) that the evidence tended to alter, vary or contradict the written instrument. We do not think the statute of frauds applies. In so far as any contract to pay the debt of another is concerned, in this case the statute is satisfied by the indorsements in blank on the note, such signatures applying to the contract already written in the note, and to such contract as the parties authorized to be written above their signatures. 2 Dan. Neg. Inst., sec. 1765; *Perkins* v. *Catlin,* 11 Conn., 213; s. c., 29 Am. Dec., 294; *Taylor* v. *French,* 2 Lea., 257; s. c., 31 Am. Rep., 611. We think, also, that parol evidence was admissible to show the real relation of the indorsers to each other. A regular blank indorsement on a negotiable promissory note ordinarily imparts a legal obligation to pay the note in default of the maker, after due diligence by the holder and due notice of the default to the indorser, primarily in the first indorser, and successively in following indorsers in their order. Whether this implication is conclusive and irrebutable, or only *prima facie,* and subject to parol evidence showing the real relation of the parties, has been the subject of much diversity of opinion among the courts. But in this State we think the law favors the admission of such evidence as not in violation of the very salutary rule forbidding the altering, varying or contradicting of a written instrument by parol evidence. In the case of *Cathcart* v. *Gibson,* 1 Rich., 10, the jury were charged that the legal effect of the contract implied from the indorsement might be varied by parol evidence, where, before any liability was incurred by either, they agreed in case of loss to contribute; and in that case, page 13, the Court of Appeals said: "The fact that there was a previous agreement between the parties, that in case of loss they should be liable to contribute as cosureties, is negatived by the verdict of the jury. If any such agreement or understanding had been proven, I think there is no doubt the

plaintiff should have recovered, and the jury were so in-
structed." While the point under consideration was not
squarely before the Court, it cannot be doubted that the
Court regarded the instruction to the jury proper, and the
effect of the case was to hold the first indorser primarily lia-
ble, and to deny contribution by the second indorser, because
the jury, under the instruction and the evidence, found as a
fact that there was no agreement to contribute. In the case
of *Smith* v. *Tunno,* 1 McC. Ch., 443, it was expressly de-
cided that parol evidence was admissible to show that a party
to a bond signed as surety where the rights of principal and
surety were involved, on the ground that the relationship of
the obligors as between themselves was extrinsic of the
written agreement. We see no reason why this principle
may not apply as between indorsers on a negotiable instru-
ment, to show whether their liablility was as joint sureties or
as successive sureties. The evidence was not designed to
vary the legal import of the note as against a holder for
value, but to show an agreement collateral to the note as be-
tween the sureties thereto. See, also, the case of *Anderson* v.
*Pearson,* 2 Bail., 107, where it was held competent to show
by parol that the one surety to a note signed as cosurety on
an agreement of the other surety to indemnify him. The
case of *Aiken* v. *Barkley,* 2 Speer, 628, cited by appellant,
does not conflict with this view. That case decided that
indorsers do not stand in the relation of cosureties to each
other because of the fact that the indorsements were for
*accommodation* and not for value. But the case seems to
recognize that indorsers might engage between themselves
for contribution, and that the legal effect of a blank indorse-
ment may be subject to a parol special agreement for con-
tribution. In the case of *Rugley* v. *Davidson,* 2 Mills, 33, a
suit by an indorsee against an indorser after maturity, a
majority of the Court held parol evidence admissible to show
a special agreement that the indorsee was not to resort to the
indorser until after suing the maker and failure to collect.
It must be said, however, that in that case the Court deemed

it material that the indorsement was made after maturity. Tending to the view we have announced, in *Kapshaw* v. *Ryon*, 16 S. C., 352, parol evidence was received to prove an agreement in which a written instrument originated and of which it constituted only a part, so as to show that the written instrument was only intended as a security for future advances; in *Fullwood* v. *Blanding*, 26 S. C., 312, to explain the object and intent of an assignment of a bond and mortgage; in *Calvert* v. *Nickles*, 26 S. C., 310, to show the manner and to whom purchase money or the consideration expressed in a deed of conveyance was to be paid; in *McAteer* v. *McAteer*, 31 S. C., 313, to show that a note and mortgage were merely intended to save harmless, and indemnify the payee for contingent liabilities as surety which he did not pay. These and many other cases in this State show that parol evidence is admissible to impeach the consideration and delivery of an instrument in writing. The mere writing of a blank indorsement on a negotiable note does not constitute the contract. There must be, also, a consideration and a delivery to complete it, and those matters are subject to parol evidence. In this case the special agreement sought to be proven by parol may also fairly be said to relate to the consideration or inducement under which the plaintiff indorsed and delivered the note to the defendant for negotiation for the accommodation of the maker. While a number of courts in other jurisdictions hold that the legal import of a blank indorsement cannot be varied by parol evidence, showing a special contemporaneous agreement of the kind in question, many other cases might be cited to sustain our view. *Phillips* v. *Preston*, 5 How., 279; *Ross* v. *Espy*, 66 Penn. St., 481; 5 Am. Rep., 394; *Holmes* v. *Bank*, 38 Neb., 326; 41 Am. St. Rep., 733; *Graves* v. *Johnson*, 48 Conn., 160; 40 Am. Rep., 162, and note; *Dye* v. *Scott*, 35 Ohio St., 194, 35 Am. Rep., 604; *Brewer* v. *Woodward*, 54 Vt., 581, 41 Am. Rep., 857; *Smith* v. *Morrill*, 54 Me., 48; *Clapp* v. *Rice*, 13 Gray, 403; *Cole* v. *Smith*, 39 La. Ann., 55, 29 Am. Rep., 343; *Taylor* v. *French*, 2 Lea., 257; 31 Am.

Rep., 609; 7 Ency. Law, 359; 4 Ency. Law, 487; Dan. Neg. Inst., sec. 703 and 720 A.

3. The next question is whether the testimony established the alleged agreement between the indorsers to be liable as cosureties. The Circuit Court found in favor of said agreement, and treating this case as one in equity, as all parties have assumed, we are to inquire if the conclusion of the Circuit Court is against the preponderance of the evidence. While in the Circuit Court the burden was upon the plaintiff, respondent, to establish the special agreement, the burden is now upon the defendant, appellant, to show error in the conclusion of the Circuit Court finding such agreement. The plaintiff testified most positively that such agreement was had; and while this is denied by the defendant, the circumstances all corroborate the plaintiff's view. It is not disputed that plaintiff and defendant were stockholders and directors of a corporation known as the Richland Wine Company, the defendant being its president. This company was indebted to the Central National Bank of Columbia, S. C., by overdraft, and to raise funds to cover this, the company, by W. H. Gibbes, its president, made its note payable to the order of plaintiff for $1,500, which note was indorsed in blank as follows: John T. Sloan, Jr., W. H. Gibbes, E. R. Arthur. In this form the note was discounted at the bank in the hands of W. H. Gibbes, and the proceeds applied by Gibbes to the indebtedness of said company. It appears clearly that the plan adopted by the parties to pay the company's indebtedness was the note in question, with the expectation that all the directors of the company would indorse it. After the note was drawn and indorsed by Sloan, Gibbes and Arthur, three of the directors, the defendant carried the note to the other directors, who declined to sign. When the defendant requested Mr. Allen J. Green, one of the directors, to indorse the note, he represented to Mr. Green that the overdraft at the Central National Bank was to be taken up by this note indorsed by the directors. The other directors refusing to indorse, the note was dis-

counted with the three indorsers named. It is thus made manifest that the plan of indorsement by all the directors to pay the company's indebtedness was intended to be a joint indorsement to provide for the payment of a debt which all the indorsers as stockholders and directors had an interest in common to have paid. It is not at all probable that an experienced lawyer, as is the plaintiff, would have become first indorser under such circumstances, unless there was an agreement such as he asserts. The defendant, after stating that the note had been indorsed by Sloan, himself and Arthur, and then was carried by him to the other directors for their indorsement, and that they declined, testified that he carried the note back to plaintiff and told him that the other directors would not indorse, and asked him what was to be done, and that plaintiff told him that he did not see anything else but just to give that note to the bank to protect the overdraft, and that he did so. From defendant's own testimony, we are bound to infer that when the indorsements by plaintiff and defendant were made, both parties understood that all the directors would sign jointly, and we cannot see in what took place afterwards any different understanding or agreement between the parties to the note. Indeed, the negotiation of the note by the defendant, and the application by him of the proceeds to a debt, which concerned him, as stockholder and director as well as the plaintiff, indicate very strongly a joint indorsement for a common interest. We do not think, as argued by appellant's counsel, that the payment of the whole by the plaintiff to the bank, indicated that he conceived himself primarily liable as between himself and the defendant. The bank was no party to and had no knowledge of the special agreement, and had the right to compel payment from the first indorser. But, on the other hand, it is a fact of some importance, that when plaintiff, before bringing suit, wrote to defendant asking a settlement of the matter, defendant replied, declining to assist or contribute on other grounds than the primary liability of plaintiff as first indorser, and without denying the agreement to which his

attention was called. Of course, it is not a pleasant duty to decide a question of fact between gentlemen of the high character and intelligence of the parties before the Court, but it cannot be shirked. We concur with the Circuit Court in the conclusion that there was, in fact, a special agreement between plaintiff and defendant when they indorsed the note to become liable to each other as cosureties in the event of payment by either.

4. Does the evidence show that the plaintiff has paid the note, so as to authorize a suit by him for contribution? We think so. The original note was executed October 23, 1891, at six months, for $1,500, and was renewed in same form for $1,556.40, July 5, 1892, payable at ninety days, without any evidence of any understanding or agreement among the parties different from the original agreement. At the insistence of the bank, this renewal note was taken up by plaintiff on April 21, 1894, with interest, the same having been included by plaintiff in another note to the bank, including other indebtedness, secured by a mortgage of real estate and accepted by the bank as payment of renewal note. The renewal note, under the circumstances, was not a payment of the original obligation, but was a mere continuance of the original rights of the parties—*Bank* v. *Gunhouse,* 17 S. C., 489—but when the bank accepted plaintiff's individual note, secured by mortgage, as payment of the renewed note, plaintiff then certainly occupied the position of an indorser who had paid the note.

5. The next matter we notice is the measure of the liability for contribution. The Circuit Court has found that the third indorser, Arthur, was dead and insolvent, and this fact is not now questioned. In case any surety liable for contribution is insolvent, the rule is that contribution must be in proportion to the number of solvent sureties. *Harris* v. *Ferguson,* 2 Bailey, 401; *McKenna* v. *George,* 2 Rich. Eq., 22; 1 Story's Eq., par. 496, 7 Ency. Law, 341, 2d ed.

6. Appellant makes the point that the failure of the bank

to protest the note for non-payment, and give notice to indorsers, exonerates defendant from liability for contribution. It appears that, as matter of fact, the note was not protested, but evidence was offered to show a parol waiver of protest by plaintiff and defendant. The parol waiver by plaintiff was clearly established, and it cannot be doubted, especially in view of the rule above announced as to the admissibility of parol evidence, that a verbal waiver of protest may be made. Mr. Daniels, in his Neg. Inst., sec. 1093, states that a verbal waiver of protest is as effectual as a written one. So if plaintiff waived protest and was liable and compelled to pay, his right to contribution was complete, even though the bank, without fault of Sloan, may have failed to protest against the other indorsers and in the absence of any waiver by them. While such a defense might avail defendant in a suit by a holder against him as indorser, yet it ought not to avail in this suit, where he is sought to be made liable on a special agreement for contribution as a cosurety.

7. As to the correct amount which defendant should contribute. In reference to the sum of $24.95, which appellant thinks should have been credited on the amount paid by plaintiff, it appears that the Central National Bank obtained a judgment against the Richland Wine Co. on the said note, that subsequently a mortgage on the real estate of the company was foreclosed, and the property sold and was purchased by plaintiff, and that of the purchase money, after paying the mortgage debt and costs of foreclosure, the sum of $24.95 remained in plaintiff's hands applicable to the judgment on said note. We presume the Circuit Court did not give any credit for this sum because it was first applicable to the costs of the judgment against the wine company, and was probably not more than adequate for this purpose. But as the Brief does not show the amount of such costs, we are unable to say whether there was any error in failing to allow any credit from that source. The Circuit Court, no doubt, inadvertently, treated the note paid by plaintiff as calling for

$1,560.40, instead of $1,556.40, the correct amount, and calculated interest on the former sum from October 6, 1892, its maturity, to April 21, 1894, when paid, at eight per cent. per annum. While the evidence shows that plaintiff actually paid interest at that rate, yet as he was only legally liable to pay seven per cent. interest, defendant should not be held liable for the higher rate. This, as we understand, is conceded by respondent. The correct amount which defendant should pay plaintiff is $1,164.09, instead of $1,188, as found by the Circuit Court.

The judgment of the Circuit Court, modified as above indicated, is affirmed.