Argued Oct. 28, decided Nov. 26, rehearing denied Dec. 31, 1912.

## HUNTER v. HARRIS.

(127 Pac. 786.)

**Bills and Notes—Accommodation Maker—Liability.**

1. Under the negotiable instruments law, an accommodation maker is primarily liable as a principal debtor, notwithstanding an indulgence given to the indorser or drawer for whose benefit he became a party to the instrument.

**Bills and Notes—Accommodation Indorser—Sureties—Contribution.**

2. H., desiring to purchase certain horses, requested plaintiff to sign a note with him for part of the consideration, which plaintiff agreed to do, provided H. would get defendant also to sign the note. H. went to defendant with the note signed by himself and plaintiff and told defendant of plaintiff's agreement, whereupon defendant signed the note on the back. Held, that defendant under the negotiable instruments law was a co-surety for H., and hence plaintiff, having been compelled to pay the note, was entitled to recover contribution from defendant.

**Evidence—Parol Evidence.**

3. Section 5901, L. O. L., provides that as between each other indorsers are liable prima facie in the order in which they indorse, but evidence is admissible that they have agreed otherwise. Held that where plaintiff signed and defendant indorsed a note for the accommodation of the co-maker, and plaintiff on being compelled to pay the note sued defendant for contribution, and the whole transaction was alleged in the pleadings, oral evidence was admissible to show the circumstances connected with the execution of the note so as to establish that plaintiff and defendant were co-sureties.

From Wallowa: JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE BEAN.

This is an aciton by W. B. Hunter against D. H. Harris for contribution as co-surety on a note.

The complaint alleges, in substance, that Arthur D. Hulse, with plaintiff and defendant, executed to J. W. Cook their promissory note for the sum of $270, which

plaintiff and defendant signed as accommodation makers, for the purpose of lending their names and giving credit to the instrument; that plaintiff signed his name on the face of the note; that defendant, in order to suit his convenience, placed his signature on the back of the same with the intent to become liable as an accommodation maker; that Cook obtained a judgment against plaintiff for a balance of the note and costs; that plaintiff paid the same, which amounted to the sum of $229.10.

Defendant pleads, in effect, that he signed the note on the back thereof as an indorser, without consideration, and became liable thereon only as such; that he was not notified of the presentment, nonpayment, or dishonor of the note at the maturity thereof. Upon the trial, plaintiff, W. B. Hunter, testified, in substance, that Hulse wanted him to go his security; and he told Hulse to get Harris on the note and then he would sign it; that he paid the judgment obtained, and has not been reimbursed. Arthur D. Hulse testified, on behalf of plaintiff, to the effect: That after Hunter signed the note he took it to Harris, who said:

"There is no place on the face to sign it; where will I sign it?"

That, upon being advised to do so, he signed it upon the back. Hulse stated that he wanted to buy a span of horses, and that Hunter said he would sign for them if Harris would, and that the latter agreed to sign the note if Hunter would.

The note was introduced in evidence, a copy of which with indorsements, is as follows:

"$270.00.                    Lostine, Oregon, July 6, 1908.

Six months after date, without grace, I promise to pay to the order of J. W. Cook, at Lostine, Oregon, two hundred and seventy dollars, in gold coin of the United States of America, with interest thereon in like gold coin at the rate of ten per cent per annum from date until paid, for

value received. Interest payable when due, and in case suit or action is instituted to collect this note, or any portion thereof, I promise to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit or action.

(Signed)  Arthur D. Hulse,
W. B. Hunter."

On the back: "(Signed) D. H. Harris. July 7, 1908, received on within note, $41.00. May 6, 1909, received on within note $100.00."

At the close of plaintiff's case, counsel for defendant moved the court for a nonsuit, on the grounds: (1) That there was no evidence to show that the plaintiff and defendant were jointly liable, and hence that defendant is not liable to contribution; (2) that there was no contract as between plaintiff and defendant that they were to be jointly liable; and (3) that there was no evidence to support the allegation of the complaint to the effect that defendant signed on the back of the note with intent to become liable as an accommodation maker. Counsel for defense stated that defendant would stand upon the motion. Counsel for plaintiff moved the court for a directed verdict. The court granted defendant's motion for a nonsuit.    REVERSED.

For appellant there was a brief and an oral argument by *Mr. Thomas M. Dill.*

For respondent there was a brief over the names of *Messrs. Sheahan & Cooley,* with an oral argument by *Mr. A. S. Cooley.*

MR. JUSTICE BEAN delivered the opinion of the court.

The defendant, Harris, who was an apparent stranger to the note, signed the instrument on the back thereof, prior to its delivery, without receiving value therefor, and for the purpose of lending his name to Hulse. Under the plain definition in Section 5862, L. O. L., he was an

accommodation party. So, also, was Hunter. For a determination of this case, we should, if possible, look to our negotiable instruments law, which was intended by the legislature to be a complete and comprehensive rule upon the subject. That act provides, in part, as follows: An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party. Section 5862, L. O. L. A person placing his signature upon an instrument otherwise than as a maker, drawer, or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity. Section 5896, L. O. L. Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery, he is liable as indorser in accordance with the following rules: (1) If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties; (2) if the instrument is payable to the order of the maker or drawer, or is payable to bearer, he is liable to all parties subsequent to the maker or drawer; (3) if he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee. Section 5897, L. O. L. The person "primarily" liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are "secondarily" liable. Section 6023, L. O. L. As respects one another, indorsers are liable *prima facie* in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise. Joint payees or joint indorsees who indorse are deemed to indorse jointly and severally. Section 5901, L. O. L.

1. It has been decided by the court that, under the negotiable instruments law, an accommodation maker is primarily liable as a principal debtor notwithstanding an indulgence given to the indorser or drawer for whose benefit he became a party to the instrument: *Lumberman's National Bank* v. *Campbell*, 61 Or. 123 (121 Pac. 427); *Cellers* v. *Meachem*, 49 Or. 186 (89 Pac. 426: 10 L. R. A. [N. S.] 133: 13 Ann. Cas. 997); *Murphy* v. *Panter*, 62 Or. 522 (125 Pac. 292); *White* v. *Savage*, 48 Or. 604 (87 Pac. 1040). It is said, in regard to such a party (7 Cyc. 664), that, "where the note is payable to a designated person or order, such signature before the payee has indorsed the paper is anomalous on its face and has been variously held to be that of an indorser, maker, surety, or guarantor. This apparent divergence of opinion is due in large part to the difference in the questions presenting themselves for decision in the different cases." Respecting the liability of a party who, as an apparent stranger to a negotiable instrument, writes his name on the back of it, as to whether he is a joint maker, a guarantor, or an indorser, Mr. Justice MOORE, speaking for the court in *Lumbermen's National Bank* v. *Campbell*, 61 Or. 123 (121 Pac. 428), said:

"The question has generally been determined by considering the intention of the parties at the time the signature was thus affixed. The weight of authority seems to support the rule that if, when the instrument was issued the name was so written for the purpose of procuring credit for the maker, or if the person so signing received part of the consideration for which the obligation was given, he is regarded as an original promisor. * * As between the parties themselves, parol evidence is admissible to show that the liability of an irregular indorser is not that which it appears from his signature, but depends upon the intention of such parties. 1 Am. & Eng. Enc. Law (2 ed.) 343."

2. According to the evidence in the record, Hunter and Harris, each, proposed that he would sign the note

in question if the other would. Each accepted the other's proposition by signing the same. It is not material by what medium this proposal was conveyed from one to the other, whether by letter, wire, or through Mr. Hulse, the accommodated party. As between these two parties to the note they were co-sureties. According to this construction of the evidence the defendant would be liable to plaintiff upon the theory of law conceded by counsel for defendant. In other words, we think there was a contract, understanding, or agreement between plaintiff and defendant by which they were to be co-sureties on the note. Under these circumstances, defendant, Harris, in so far as this plaintiff is concerned, was not entitled to notice of dishonor as an indorser under the provisions of Section 5922, L. O. L., and was not released by want of such notice.

We quote from Mr. Justice SPEAR'S language in *Richards* v. *Market Exch. Bk. Co.*, 81 Ohio St. 348, 354 (90 N. E. 1000, 1001: 26 L. R. A. [N. S.] 99):

"We suppose the law to be too well settled to require citation of authorities in its support that a surety is an original maker, and becomes primarily liable to any party lawfully holding the paper; his liability to pay being absolute and in no sense dependent upon demand at maturity."

The Rhode Island Supreme Court, in construing a section of their negotiable instruments law identical with Section 5856, L. O. L., and that part of their law identical with the portion of Section 6023, L. O. L., quoted above, where defendants had signed a note upon the back thereof before delivery, in holding that the defendants were accommodation indorsers and as such entitled to notice of the dishonor of the note, plainly prefaced such assertion with the statement that "there is no evidence that they made any agreement to vary their liability." Twice in the opinion there is a

want of any agreement other than that expressed by their signatures upon the note mentioned, indicating that in the mind of the court it was proper to show such an agreement. *Deahy* v. *Choquet,* 28 R. I. 338 (67 Atl. 421: 14 L. R. A. [N. S.] 847, 848).

In a suit upon a promissory note, in *Good* v. *Martin,* 95 U. S. 90 (24 L. Ed. 341), the court below charged the jury that if the defendant, without making any statement of his intention in so doing, wrote his name on the back of the note before its delivery to the payee, he is presumed to have done so as the surety of the maker, for his accommodation, and to give him credit with the payee; and that, if such presumption is not rebutted by the evidence, he is liable on the note as maker. It was held that the charge was not erroneous. At page 95 of 95 U. S. (24 L. Ed. 341), Mr. Justice CLIFFORD said: "Courts of justice may acquaint themselves with the facts and circumstances that are the subjects of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described."

In *Haddock, Blanchard & Co.* v. *Haddock,* 192 N. Y. 499, 511 (85 N. E. 682, 686: 19 L. R. A. [N. S.] 136), it is said:

"The articles of the negotiable instruments law relating to the presentation of bills and notes for payment and notice of dishonor (articles 7 and 8) further show an intention by the legislature to leave the order of liability among those whose names are on the instrument subject to determination by any competent evidence."

And also on page 512 of 192 N. Y. (on page 687 of 95 N. E.: 19 L. R. A. [N. S.] 136), we find the following:

"There is no reason that we can conceive why the legislature should intend to change the rule in regard to

the admission of parol evidence as it had existed in this State for many years. All of the quotations that we have made from the negotiable instruments law show that it has enlarged rather than restricted the rules allowing parol evidence to show the true liability and relation of the parties whose names appear upon the bill or note in all actions between themselves."

This well-considered case is very much in point. It was there held that upon the acceptance of a bill the acceptor becomes the principal debtor and primarily liable to pay the amount thereof. All other parties to the instrument, including the maker and indorser, are secondarily liable. The maker therefore is an indorser in legal effect and within the intention of Section 118 of their negotiable instruments law, identical with Section 5901, L. O. L.

Mr. Daniel, in his work on Negotiable Instruments (volume 1 [5 ed.] Section 710), says:

"* * Whatever diversities of interpretation may be found in the authorities on the subject, they very generally concur, though not with entire unanimity, that, as between the immediate parties, the interpretation ought to be in every case such as will carry their intention into effect, and that their intention may be made out by parol proof of the facts and circumstances which took place at the time of the transaction."

See, also, Story, Promissory Notes, Section 479.

3. One feature of defendant's objection suggests the insufficiency of the complaint to admit oral evidence in regard to signing the note. The whole transaction is set forth at length in the complaint and in the answer, differing only in their conclusions. In view of Section 5901, L. O. L., under the issues in this case, and applying the rules suggested in *Lumbermen's National Bank* v. *Campbell*, 61 Or. 123, we think it was competent for plaintiff to introduce oral evidence to explain the transaction as between himself and defendant, in accordance with

the understanding at the time of the execution of the note, and to show that defendant, who was prima facie an accommodation indorser, was as to plaintiff a co-surety with him. It should be borne in mind that this is an action between the parties to the note, for contribution as co-surety. *Rouse* v. *Wooten*, 140 N. C. 557 (53 S. E. 430: 111 Am. St. Rep. 875: 6 Ann. Cas. 280). Strictly speaking it is not based upon the note, which had run its course and been paid before suit. In the examination of this question it is worthy of note that a surety on a negotiable instrument is not mentioned in the negotiable instruments law. This law provides that, in any c., se not provided for in the act, the rules of the law merchant shall govern. Section 6023, L. O. L.

There was error in granting the motion for a nonsuit, and the judgment must be reversed. The evidence being all contained in the record, we have to consider the case under the provisions of Section 3, Article VII, of the Constitution of Oregon, which provides in part that if, in any respect, the judgment appealed from should be changed, and the Supreme Court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases.

The judgment of the lower court will therefore be reversed, and the cause remanded to that court, with directions to enter a judgment in favor of plaintiff for $114.55.     REVERSED.