## No. 9438.

### OWENS *v.* GREENLEE, ET AL.

1. CONTRIBUTION—*Accommodation Endorsers.* Where one of several accommodation endorsers, pays the bill or note endorsed he is entitled to contribution.

2. *Collateral Security,* held by the party making the payment in no manner defeats his action for contribution.

3. *Measure of Liability.* Where one or more of those liable to contribution are insolvent, a ratable apportionment is made among the solvent joint debtors.

4. BILLS AND NOTES—*Endorsers*—*Notice of Dishonor.* In a suit in equity by one of several accommodation endorsers against the others, for contribution, the defendants will not be heard to contend that they were entitled to notice of the dishonor and protest of the bills.

The provisions of Rev. Stat., sec. 4552, have no application in such case.

*Error to Denver District Court, Hon. John A. Perry, Judge.*

Mr. FREDERICK T. HENRY, Mr. CARLISLE FERGUSON and Mr. GEORGE O. MARRS, for plaintiff in error.

Mr. GEORGE P. STEELE, for defendants in error.

Mr. Justice Bailey delivered the opinion of the court.

PLAINTIFF brought this action in equity for contribution. At the close of his testimony an order of non-suit was entered. This order, and a judgment of dismissal entered in pursuance thereof, are now here for review.

It appears that plaintiff and defendants were joint accommodation endorsers of drafts aggregating $10,000.00, drawn at various times during the year 1913, by The Colorado-Wyoming Power & Reclamation Company upon Westling, Emmet & Company, of Philadelphia. The amount thereof the plaintiff ultimately had to pay to The Colorado National Bank of Denver, in whose favor the drafts were drawn.

Plaintiff and his co-endorsers were stockholders in The Routt County Development Company. Greenlee, Heberton and Given were respectively President, Vice-President and Secretary thereof, and each had a salary as such officers. The Colorado-Wyoming Power & Reclamation Company was organized to take over the business of The Routt County Development Company, but owing to financial troubles the actual transfer never took place.

The first draft for $10,000.00 was drawn April 1st, 1913, and was payable to the order of The Colorado National

Bank of Denver, July 1st, 1913.  Prior to the delivery to the bank the draft was duly endorsed by the defendants and the plaintiff.  There appears to have been no direct communication between plaintiff and Greenlee and Heberton in reference to the conditions under which the parties were to endorse, the defendant Given having acted as intermediary in all negotiations; each one consented, however, as the proofs show, to endorse only if the others did.  Such was the agreement and understanding; that is common endorsement by all, and mutual liability.

It is shown conclusively that it was necessary to promptly raise money to save the company, and that the amount of the draft in question could be secured from The Colorado National Bank, if Owens endorsed.  There is abundant testimony to establish that the defendants knew that Owens would not lend his signature to the paper unless the defendants also endorsed.  Later it appears that Owens demanded additional security, and received a deed to certain land from the Reclamation Company for the purpose.

When this draft became due it was renewed by two others, each for $5,000.00, endorsed as before.  One of them was again renewed on September 1st, 1913, this renewal being endorsed only by Owens and the defendant Given.  The other became due in October and was protested and notice given to Owens, Given and The Colorado National Bank.

The other renewal, which bore the endorsement of Owens and Given only, was likewise dishonored at maturity and protested, and notice given as before.  Both drafts were thereafter paid by Owens with interest.  The land deeded to Owens was foreclosed, and after deducting the amount expended in clearing off an incumbrance thereon, and in discharging other necessary expenses, the balance of the sale price was credited on account of the drafts.  By this suit plaintiff seeks to recover ratable contribution for the balance of his outlay, after giving credit for the net amount realized from the sale of the land security.

It is not denied that defendants and plaintiff were joint accommodation endorsers of the paper in question, but the defendants contend that they were entitled to notice of dishonor and protest under sec. 4552, the Negotiable Instruments Act, R. S. 1908. There is no merit in this claim, because this action is not brought upon the drafts themselves, but is strictly a suit in equity, for reimbursement to plaintiff for his payment of a joint liability. If it were a suit between a third party, a holder for value in due course, and the endorsers, then a different rule would prevail, but as this is distinctively an equitable action, between co-endorsers only, to such action the provisions of the Negotiable Instruments Act, as to notice of dishonor and protest, has no application whatever, because no question concerning the negotiation of or liability upon commercial paper is involved. *Sloan v. Gibbes,* 56 S. C. 480, 35 S. E. 408, 76 Am. St. 559; *Mercantile Bank v. Busby,* 120 Tenn. 652, 113 S. W. 390; *Hunter v. Harris,* 63 Ore. 505, 127 Pac. 786. It is clearly manifest from his written opinion, brought up in the record, that the learned trial judge fell into the error of holding that the case is controlled by the provisions of the Negotiable Instruments Act, and that for lack of notice of dishonor and protest required thereby, and for that reason alone, he erroneously concluded that the defendants were not liable.

It is admitted that Owens paid the drafts and the testimony of the defendants themselves shows that they received substantial benefit from such endorsement. The parties as joint accommodation endorsers were alike liable, and since one of them has paid the debt he should, in equity and good conscience, have ratable contribution from his co-endorsers. The rule, as stated in 6 R. C. L., paragraph 2, page 1036, is as follows: "It is a familiar principle that, when several parties are equally liable for the same debt and one is compelled to pay the whole of it, he may have contribution against the others to obtain from them the payment of their respective shares. It is almost universally conceded that this doctrine is not founded on con-

tract but on an acknowledged principle of equity, which requires that those who voluntarily assume a common burden should bear it in equal proportions. And when any burden ought, from the relation of the parties or in respect of property held by them, to be equally borne, and each party is *in aequali jure*", contribution is due.

In *Hagerthy v. Phillips*, 83 Maine 336, 22 Atl. 223, it was sought to recover contribution for having paid a note upon which, with two others, the plaintiff was an endorser. The court, in holding that plaintiff had a right to contribution, said, at page 339: "Does the evidence justify the conclusion? Not a word was spoken by one endorser to another during negotiation. The facts were communicated through Mason. Each promised to sign if others would. If the act done was the act promised to be done, the order of signing was immaterial, because it was not a qualification of the promise. Each endorser made precisely the same promise. Each was as much entitled to sign last as the other. The first and second signers required assurance that the third would sign, a useless formality if their risk was not to be lessened thereby. They understood that the endorsers were to be holden alike, basing their conclusion on precisely the same facts that were presented to the defendant to induce him to sign. The request of Mason was that the defendant would endorse for him, not for others. The idea was to divide the risk among his friends. The defendant's promise was not to endorse last, but to endorse. He was not to do an act alone—the three were to do the act. The three did it, sharing obligation and risk alike."

In *Hunter v. Harris, supra*, the court, in holding that failure to give notice of dishonor to a co-surety will not defeat contribution as between co-sureties, said, in 127 Pac. at page 788: "According to the evidence in the record, Hunter and Harris, each, proposed that he would sign the note in question if the other would. Each accepted the other's proposition by signing the same. It is not material by what medium this proposal was conveyed from one to the other, whether by letter, wire, or through Mr. Hulse,

the accommodated party. As between these two parties to the note they were co-sureties. According to this construc- tion of the evidence the defendant would be liable to plain- tiff upon the theory of law conceded by counsel for defend- ant. In other words, we think there was a contract, under- standing or agreement between plaintiff and defendant by which they were to be co-sureties on the note. Under these circumstances defendant, Harris, in so far as this plaintiff is concerned, was not entitled to notice of dishonor as an endorser under the provisions of section 5922 L. O. L. and was not released by want of such notice."

Discussing the nature of the suit, the court continues: "It should be borne in mind that this is an action between the parties to the note, for contribution as co-sureties. * * * Strictly speaking it is not based upon the note, which has run its course and been paid before suit. In the examination of this question it is worthy of note that a surety on a negotiable instrument is not mentioned in the Negotiable Instruments Law. This law provides that, in any case not provided for in the act, the rules of the law merchant shall govern."

It is admitted that all of the endorsements were placed upon the draft before it was negotiated, to make it accept- able to the bank, and from the evidence it is plain that this was done chiefly for the advantage of the defendants, and it is apparent that they in fact did receive substantial bene- fits from the transaction. The judgment rendered in this case must, therefore, be reversed under the settled rule that where several persons are liable for the same debt and one of them pays it, he has an action in equity for contribution against his co-debtors.

Nor is there any merit in the claim that because certain land was conveyed to plaintiff as partial security the parties were not placed upon an equal footing. Since the net proceeds from the sale of the land were credited upon the joint liability, it is clear that the defendants have and can have no ground of complaint on that score. The fact that a co-surety may have in his possession securities to

indemnify him against the default of his principal, in no sense prejudices his right to contribution. Daniels on Negotiable Instruments, Vol. 2 (6th Ed.), sec. 1341. Elliott on Contracts, sec. 3983; *Clayton v. Johnson*, 27 Ala. 503, 506. The situation of the parties is equal when they are under a common burden or liability, whether their respective liabilities are in the same or different amounts. 13 C. J., 822.

Upon principle and authority plaintiff has a plain right to the relief prayed. The whole purpose of the Law Merchant prior to the adoption of the uniform Negotiable Instruments Act was to make bills of exchange and checks, when put into circulation, to that extent take the place of money. The rules by statutes and decisions were so adopted for the protection of the purchaser for value in due course, and the makers and endorsers in relation to third persons. That Act simply endeavors to codify these rules, and to adopt what seemed to be the best and most uniform for given cases. Neither the Law Merchant nor the Negotiable Instruments Act attempted or attempts to prescribe or determine the rights of joint endorsers or joint makers as between themselves. These rights are left to be settled according to the principles of the common law and the equities between the parties. 2 R. C. L. 1123; 8 C. J. 291; *Sloan v. Gibbes, supra; Hunter v. Harris, supra.*

It is not questioned that Givens is insolvent and plaintiff prays judgment, by way of contribution, against each of the defendants Greenlee and Heberton for one-third of the amount which he has been compelled to pay. The measure of liability for contribution is a ratable apportionment among the solvent joint co-debtors. In *Sloan v. Gibbes*, *supra*, in speaking to this point, that court said: "The next matter we notice is the measure of the liability for contribution. The circuit court has found that the third endorser, Arthur, was dead, and insolvent; and this fact is not now questioned. In case any surety liable for contribution is insolvent the rule is that contribution must be in proportion to the number of solvent sureties. *Harris v.*

*Ferguson,* 2 Bailey 401; *McKenna v. George,* 2 Rich. Eq. 22, 1 Story's Eq., par. 496; 7 Enc. Law 341, 2nd Ed."

It appears from the record that the parties to this action have testified at length and the case is now, therefore, before the court upon a full record. No valid defense, either at law or in equity, has been plead or proved, and the right of plaintiff as a matter of fair dealing and common justice, to have contribution, is clearly manifest. The judgment below, therefore, is reversed and the cause remanded, with instructions to the trial court, in view of the undisputed insolvency of Given, to enter judgment for the plaintiff against each of the defendants Greenlee and Heberton, for one-third of the amount paid out by Owens in discharge of the joint debt, with continuing interest thereon from the date of such outlay, at the rate of eight per cent per annum, to the entry of the judgment hereby directed.

Judgment reversed and cause remanded, with instructions.

Mr. Chief Justice Garrigues and Mr. Justice Allen concur.