## O'NEAL v. STUART.

(Circuit Court of Appeals, Sixth Circuit. June 6, 1922.)

No. 3623.

1. **Bankruptcy 440—Order denying lien held reviewable by petition to revise.**

An order of the bankruptcy court denying petitioner a lien *held* reviewable by petition to revise, under Bankruptcy Act, § 24b (Comp. St. § 9608b).

2. **Subrogation 7(7)—Tennessee statute held not to change existing law as between principal and surety.**

As respects right of subrogation, Tennessee Negotiable Instruments Act *held* not to change existing law as to the relations of joint makers or indorsers as between themselves, but to apply only to relations between payors and payee.

3. **Subrogation 31(2)—Surety as purchaser of note entitled to benefit of security.**

Petitioner was joint maker with bankrupt, but in fact surety, on a note given for property purchased by bankrupt and secured by vendor's lien. The note, not having been paid by bankrupt at maturity, was purchased by petitioner, indorsed without recourse by the payee, who afterward entered cancellation of the lien on the record. *Held*, that petitioner was entitled to enforce the note and to reinstatement of the lien as against bankrupt and his trustee.

Petition to Revise and Appeal from the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

In the matter of Dooley, bankrupt; J. M. Stuart, trustee. On petition to revise and appeal from an order of the District Court by J. P. O'Neal. Appeal dismissed, and order reversed on petition to revise.

J. B. Sizer, of Chattanooga, Tenn. (Arthur Traynor, of Cleveland, Tenn., and Sizer, Chambliss & Sizer, of Chattanooga, Tenn., on the brief), for petitioner and appellant.

D. Sullins Stuart, of Cleveland, Tenn., for respondent and appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. [1] This record presents a case which is near the line between review by petition to revise, under section 24b of the Bankruptcy Act (Comp. St. § 9608), and review by appeal, under section 24a of the same act. We conclude that the former method is the more appropriate one. Accordingly we dismiss the appeal and entertain the petition to revise.

The case involved the rights of O'Neal with reference to a note given by Dooley to evidence part of the purchase price of an interest in land that day bought from Campbell by Dooley, and secured by vendor's lien reserved on the face of Campbell's deed. O'Neal signed this note with Dooley, and appeared to be a joint maker; in fact, he signed solely for Dooley's accommodation, and, as between himself and Dooley, he was surety and Dooley was principal. When later Dooley became bankrupt, the note had become due and remained un-

paid by Dooley, and O'Neal had purchased the note from Campbell and had it transferred to him by Campbell's indorsement without recourse, O'Neal sought to prove against Dooley in bankruptcy his claim for the amount paid Campbell and to establish it as a claim secured by the reserved vendor's lien. The District Judge denied his right to have the security, and the rightfulness of that denial is the only question here.

[2] The conclusion of the trial court was based upon its construction of the Uniform Negotiable Instruments Act, as adopted in Tennessee, being chapter 94 of the Tennessee Acts of 1899. The material parts are as follows:

From the preliminary definitions, section 3516a4, Shannon's 1917 Tenn. Code: The person "primarily" liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are "secondarily" liable.

From section 119 (Shannon, § 3516a127): A negotiable instrument is discharged: (1) By payment in due course by or on behalf of the principal debtor; * * * (5) when the principal debtor becomes the holder of the instrument at or after maturity in his own right.

From section 120 (Shannon, § 3516a128): A person secondarily liable on the instrument is discharged: [By discharge of the instrument, discharge of a prior party, release of principal debtor, extension of time to principal debtor, etc.]

From section 121 (Shannon, § 3516a129): Where the instrument is paid by the party secondarily liable thereon it is not discharged; but the party so paying it is remitted to his former rights as against all prior parties, etc.

The matter is, of course, one in which the federal courts are bound by any construction of the state statutes, which has been definitely given by the state courts. In Graham v. Shephard, 136 Tenn. 418, 189 S. W. 867, Ann. Cas. 1918E, 804, it is held that one in O'Neal's position was a person "primarily liable" rather than "secondarily liable," under the stated definition, and therefore was not discharged by that extension of time granted by the holder to the maker, which, under the provisions of section 120, would discharge a person secondarily liable. Based upon this decision it was thought that O'Neal was a "principal debtor" under section 119, and that, as he had become the holder of the instrument after maturity in his own right, the instrument was thereby discharged, and the security fell with it.

It goes without saying that under the familiar rules, expressly recognized in Tennessee (Byrns v. Woodward, 10 Lea [Tenn.] 444; Fidelity Co. v. Bank, 127 Tenn. 720, 157 S. W. 414), and prior to the passage of the Negotiable Instruments Act, O'Neal, upon paying the note in pursuance of his obligation, would have become by subrogation entitled to any security which Campbell held, and by the purchase of the note from Campbell would have become Campbell's assignee of that security. The question, therefore, is whether this statute and its construction by the Supreme Court of Tennessee have changed the law of negotiable instruments in this very important particular.

In Graham v. Shephard the question arose as between the payee

and the accommodation maker, and the inquiry was whether the payee, who had full knowledge of the facts, was bound to regard the accommodation maker as a party secondarily liable, for the purposes of applying section 120. The holding is that, as between these parties and for that purpose, such accommodation maker is one "primarily liable" —and perhaps "principal debtor" as well. It does not necessarily follow that this definition must be accepted as between the joint makers themselves, and for the purpose of determining their respective rights among themselves.

In Merchants' Co. v. Bushnell, 142 Tenn. 275, 218 S. W. 709, the question was likewise wholly between the payee and the joint maker, who was in fact a surety. The payee held security covering this and another note, and had applied the security upon the other note while insisting that the surety pay this one. The suit was an effort by the surety to compel the payee to apply the security first upon the note signed by the surety. It is a commonplace, both as to marshaling assets and as to subrogation, that neither will be compelled to the prejudice of the security holder. It was obvious that plaintiff had no case. As the Supreme Court of Tennessee said:

"We do not know of any principle of law or equity which confers upon [plaintiff] such right, and no authority is cited upon the brief."

Whether the so-called surety was truly a party primarily liable under the Negotiable Instruments Act was not important to the conclusion, so far as we can see; but, if the statement of the court to this effect should be taken as one of the things decided, still it would not reach a case where the surety was only proceeding against the principal maker for indemnity and the rights of the payee were not involved.

No reference is made to any other cases in Tennessee; and hence it is clear that the statute has not been construed in that state, so as to reach the question before us. There is no judicial opinion, so far as we find, to the effect that this statute either purports to or was intended to change the existing law as to the relations of joint makers or indorsers as between themselves. No such result would naturally follow from an arbitrary definition intended for application to other situations.

The classification into those primarily and those secondarily liable was for the benefit of the holder in order that he might regulate his conduct; before the statute a joint maker who was really a surety for the maker was nevertheless a principal as to the payee; the statute continued the same situation under another name. The makers and indorsers could always show by parol their true interrelationship, and there was no occasion for an arbitrary classification of them as among themselves. The Supreme Court of Tennessee itself, in Bank v. Busby, 120 Tenn. 652, 666, 113 S. W. 390, 393, speaking of the respective rights and duties as among themselves of those who were apparently all indorsers alike said:

"We are of the opinion that the real contract between the parties can be shown now as fully as it could have been shown before the passage of the Negotiable Instruments Act."

To the same effect is the holding of the court in Haddock v. Haddock, 192 N. Y. 499, 510, 85 N. E. 682, 686 (19 L. R. A. [N. S.] 136). The court said:

"There is nothing in the Negotiable Instruments Law to indicate an intention on the part of the Legislature to change the rule as established in this state relating to the receipt of parol evidence to determine the primary liability as between the persons whose names appear upon the instrument or as between those secondarily liable thereon. * * * Parol evidence is necessary to determine whether a party to an instrument, including an indorser thereon, is an accommodation party, and also to determine which other party to the instrument he had accommodated."

So in Hunter v. Harris, 63 Or. 505, 127 Pac. 786, it is held in effect that the act has not changed the law, as between principal and surety, that a surety is not mentioned in the entire act, and that the act expressly provides that, in any case not therein provided for, the established rules of the law merchant shall govern. The decision in Spire v. Spire. 104 Kan. 501, 180 Pac. 209, even if it were to be followed, would not lead us to the conclusion that O'Neal was without remedy. That also was a case where subrogation was sought to the prejudice of the security holder, and it was necessarily disallowed.

[3] We think it follows that while Campbell was entitled to consider O'Neal as one primarily liable, or even as a principal debtor, yet that as between O'Neal and Dooley, O'Neal never was the principal debtor and the statute did not make him one. Dooley, therefore, cannot be heard to say that, when O'Neal purchased the note, Dooley was discharged by virtue of clause 5 of section 119. On the contrary, the relations and rights of O'Neal and Dooley must be governed by section 121.

After the note was bought by O'Neal and before the bankruptcy, Campbell entered upon the margin of the record of the deed, a discharge of the vendor's lien therein reserved. This action was wrongful as against O'Neal and did not entitle Dooley, or any one in his shoes, to deny the continued existence of the lien. Early v. Williams, 135 Tenn. 249, 186 S. W. 102, L. R. A. 1916F, 418.

We do not see that the trustee in bankruptcy stands in any better position. He has the rights of creditors with execution at the date of the petition in bankruptcy; but we are cited to no Tennessee decision that such creditors would prevail over the lien which actually existed, though apparently discharged, and under the usual rules they would not become bona fide purchasers without more than execution. Indeed, in Early v. Williams, such a lien was preserved even as against a later incumbrancer.

We conclude that O'Neal should have been given the benefit of the vendor's lien as he prayed. The order denying him relief will be vacated, and the case remanded for further proceedings in accordance with this opinion.