Argued at Pendleton, October 30, 1922, affirmed as to the United States National Bank notes, reversed and remanded as to the Smith note, February 27, costs entered March 20, costs retaxed April 10, 1923.

## CASE *v.* McKINNIS.

(213 Pac. 422.)

**Bills and Notes—Indorser Paying Note may Recover from Co-indorser His Proportion With Interest from Payment Until Judgment.**

1. Where defendant, plaintiff, and one other indorsed a note in blank before delivering the instrument, waiving notice of demand and protest and notice of nonpayment, and plaintiff paid in full after maturity, defendant was liable to him for one-third of the amount paid, with interest from the date of payment by plaintiff to the date of judgment, in view of Section 7988, Or. L., as amended in 1917 (Laws of 1917, page 781), providing that interest shall be payable on all moneys after the same become due.

Bills and Notes—Negotiable Instruments Law Controlling Where Applicable.

2. Where the negotiable instruments law speaks it controls.

Bills and Notes—Persons Placing Names on Notes. Before Delivery, Without Indicating Intent to be Bound Except as Indorsers, are so Bound.

3. Persons placing their names on a note, not as makers, and without indicating by any words an intention to be bound in any capacity other than as indorsers, are deemed indorsers under Section 7855, Or. L., and, having signed before delivery, are liable as such under section 7856.

Bills and Notes—Indorsers' Agreement to Pay is Conditioned on Due Presentment and Notice of Dishonor, Unless Waived.

4. Under Section 7858, Or. L., prescribing the terms of the contract of indorsement, the indorsers' agreement to pay the amount of the note to the holder is conditioned on due presentment and notice of dishonor, unless such conditions be waived.

Bills and Notes—Presentment First Essential Step to Hold Indorser Liable.

5. In order to hold an indorser on a note liable, presentment is the first essential step under Section 7862, Or. L.

Bills and Notes—Notice of Dishonor Necessary to Hold Indorser Liable.

6. If a negotiable instrument is not paid, notice of dishonor is the second essential step to hold the indorser liable, in view of Section 7881, Or. L.

Bills and Notes—Notice to Maker Before Maturity not "Presentment," Furnishing Basis for Indorser's Liability.

7. Notice to the maker of a note before maturity, reminding him of the date when the note is to fall due, is not such a presentment as will furnish basis for an indorser's liability.

Bills and Notes—Notice to All Parties Before Maturity not Sufficient "Notice of Dishonor" to Bind Indorsers.

8. Sending notice before maturity to all parties to a note is not such notice of dishonor as is required to make an indorser liable under the statute.

Bills and Notes—Knowledge by Indorser That Maker was Unable to Pay Held not a Waiver of Presentment and Notice.

9. That an indorser on a note by a corporation was a stockholder and possibly a director of the corporation, and knew that the corporation was unable to pay, cannot effect a waiver of presentment or notice.

Bills and Notes—Corporate Note not Made for Accommodation of Officers or Stockholders Signing as Indorsers, Where All Proceeds are Received by Corporation.

10. Where the officers or stockholders of a corporation, acting as individuals, indorse its note before delivery, and all the proceeds are received by the corporation, the note is not made for the ac-

commodation of the individuals, even though they happen to be officers or stockholders.

**Bills and Notes—Failure to Give Notice of Dishonor to One of Two Indorsers, Liable Under Secondary Joint Liability, Discharges Both.**

11.   Where plaintiff and defendant, who were stockholders and directors in a corporation, executed a note signing as indorsers before delivery, they did not assume a contingent joint and several liability but a secondary joint liability, so that the failure to give notice of dishonor to one operated as a discharge of both, even though the other waived presentment and notice.

**Bills and Notes—Antecedent Indorser Successively Liable may be Made Liable in Solido, on Notice of Subsequent Indorser, Who Pays After Presentment and Notice.**

12.   Under Section 7899, Or. L., relating to time of notice by parties to antecedent party liable on negotiable instruments, antecedent indorsers successively liable, whether regular or irregular and whether business or accommodation indorsers, may by notice be made liable in solido to a subsequent indorser who pays the note after presentment and notice.

**Contribution—Compulsory Payment Necessary to Entitle One Co-obligor to Contribution from the Others.**

13.   To entitle one co-obligor to contribution from the other co-obligors, the payment made by him must have been made under a legal obligation to pay.

**Bills and Notes—One of Two Indorsers Discharged by Failure to Present and Give Notice of Nonpayment cannot, by Waiver and Payment, Make the Other Liable to Contribute.**

14.   Where plaintiff and defendant, who were indorsers before delivery on a note given by a corporation, were both discharged by failure to demand payment and to give notice, plaintiff could not subsequently waive demand and notice and pay the note and by such waiver and payment render the defendant liable to contribution.

From Union: J. W. KNOWLES, Judge.

In Banc.

This action is prosecuted by W. J. Case, a joint accommodation indorser, against J. L. McKinnis, another joint accommodation indorser, to compel the latter to contribute a proportionate share of three several amounts which the plaintiff paid to the holders of three promissory notes. A jury trial re-

11.   Effect of giving notice of dishonor to part only of joint indorsers, see note in Ann. Cas. 1912D, 353.

sulted in a verdict for the plaintiff, and the defendant appealed from the consequent judgment.

The complaint contains three causes of action involving three promissory notes. The first two causes of action involve two notes delivered to the United States National Bank of La Grande; and the third cause of action relates to a note executed and delivered to J. N. Smith. The Union County Telephone Company was the maker of all the notes. The telephone company on May 18, 1918, borrowed $1,000 and $2,500 from the United States National Bank of La Grande and gave to the bank two notes for the respective amounts indorsed in blank before delivery by J. T. Wickens, J. L. McKinnis and W. J. Case, and made payable six months after date. Each of these two notes contains a provision appearing on the face of the instrument, expressly waiving "notice, demand and protest, and notice of non-payment." Case paid these two notes in full on March 18, 1919, or after the maturity of the note; and subsequently Wickens contributed to Case one third of the amount so paid by the plaintiff to the bank. The plaintiff alleges and the defendant admits that Wickens, McKinnis and Case were joint indorsers before delivery of the two notes. The amended complaint is based upon the theory that the indorsers agreed that they would be equally liable if the maker failed to pay. The plaintiff demanded judgment for the amount paid to the bank on these two notes together with interest on the amount so paid at the rate of 6 per cent per annum from the date of payment. The defendant now concedes that as a result of the trial he is liable to the plaintiff for one third of the amount paid by the plaintiff to the United States National Bank of La Grande, but the defendant contends that

he is not liable for interest on that amount from the date of payment by the plaintiff to the date of the judgment; and, therefore, the only question we are required to answer concerning the two notes executed to the United States National Bank of La Grande is whether the plaintiff is entitled to interest during the period beginning with March 18, 1919, and ending with the date of the verdict and judgment.

The defendant vigorously contests the third note. This instrument was executed at Elgin on May 3, 1918, by the Union County Telephone Company; it was for $2,500 and was made payable at Elgin, Oregon, on or before one year after date to the order of J. N. Smith. It was indorsed in blank before delivery by J. L. McKinnis and W. J. Case. Smith for value sold, and by his indorsement in blank transferred the note, prior to maturity, to the State Bank of Imbler. On November 4, 1919, Case paid $2,762.99, the full amount, principal and interest, due on the note, to the State Bank of Imbler, and the bank surrendered the note to Case after first writing on the back: "State Bank of Imbler, H. H. Dickson, Cashier. Without recourse." This note is different from the other two notes in that it does not contain any provision waiving presentment, demand, protest and notice of nonpayment. The plaintiff alleges that:

"Prior to the delivery of said note, this plaintiff and this defendant jointly indorsed said note and agreed each with the other that they would be jointly liable for the amount thereof";

and that on November 4, 1919, he "was compelled to pay and did pay the same in full" to the State Bank of Imbler. The plaintiff demanded judgment for one half of the amount paid to the bank together with

interest at the rate of 6 per cent per annum from November 4, 1919, the date when he paid the bank. The defendant admitted that the telephone company executed the note as maker, and that he and the plaintiff jointly indorsed it prior to delivery, and that Smith transferred it to the State Bank of Imbler; but he specifically denied that—

"Defendant agreed with the plaintiff to become jointly liable thereon except as obligated by law by the mere fact of plaintiff and defendant's jointly indorsing said note before delivery."

The defendant has insistently contended by demurrer to the amended complaint, and by appropriate motions, objections, and requests, made during the progress of the jury trial, that the amended complaint failed to state a cause of action arising out of the third note, and that the evidence not only failed to fasten any liability upon him but that it affirmatively established his freedom from liability.

Among the most important questions claiming attention are those arising out of the indorsements made by the litigants, and those involving presentment for payment and notice of dishonor; and, consequently, it will be appropriate to give an account of the business methods followed by the telephone company and its officers and of all the circumstances under which Case paid the State Bank of Imbler.

A better understanding of the questions presented for decision may be acquired if we first describe the business methods usually followed by the telephone company and its directors in the issuance of negotiable paper; and it will be especially appropriate if we give the history of the Smith note and the circumstances under which Case paid it. We infer from statements in the record that the telephone company

was organized in 1914. The company continued to exist and transacted business until 1920. Case was a member of the board of directors from 1914 until 1920, and McKinnis was a member of the board from 1914 until some time in 1919, and possibly later, for it is not entirely clear whether he resigned as a member of the board of directors, although it does appear that in 1919 he resigned the office of president which he had held from the time of the organization of the company. When McKinnis resigned the presidency, Case, who had been serving as vice-president was chosen to fill the office of president. In May, 1918, the board of directors was composed of the two litigants, John T. Wickens, W. F. Hug, M. C. Levy and Jesse Crum. When the money was borrowed from the United States National Bank of La Grande, the telephone company "had no credit," and the company was enabled to borrow the money only by giving "the security to J. T. Wickens, J. L. McKinnis and W. J. Case on each note." Two of the directors never indorsed any of the telephone company's notes; but the other directors appear to have given their names as security to many of the company's notes. Indeed, nearly all, if not all, of the notes executed by the telephone company during its existence were indorsed by the names of two or more directors, including the litigants, Wickens and Hug; and in every instance except one where the name of any director appeared in his individual capacity, it was written on the back of the note in the form of a blank indorsement.    The one exception was where four or five signed one note "on the face." Every director did not indorse each note; but it appears that some notes were indorsed by two, others by three, and still others by four of the directors. Frequently, if

not usually, the company's notes when renewed were renewed by the company giving a new note indorsed by the same directors who had indorsed the old note. Although Case and McKinnis did not indorse all of the notes they appear to have indorsed many of them between 1914 and 1919. The three notes described in the complaint were executed by the telephone company by McKinnis as its president and by the secretary; and when explaining how he and Case came to sign their names on the back of the Smith note McKinnis stated:

"We had been in the habit of signing some of these company notes that way, and usually when I would sign it as president, you know, I would just turn the note over and sign it as indorser."

W. F. Hug testified:

"The understanding was that each one stood for his part, whatever he signed on the note; that was always the understanding I had, and the understanding amongst the members,—the directors. Sometimes there would be two or three on the note, and whatever there was on the note, each one stood his proportion";

and the witness also testified that McKinnis was a party to such understanding.

Hug further declared in substance that he heard McKinnis say: "He would stand for his part" of whatever notes, including the Smith note were signed by him. Jesse Crum said:

"I know that Mr. McKinnis often spoke of the amount of his proportionate share of security that he was on the notes for."

According to the testimony of Case the "common statement" of members of the board of directors

about indorsing the notes was: "I will stand for my part if you will stand for yours."

The history of the J. N. Smith note for $2,500 begins when the telephone company borrowed $3,000 from Helen Smith and gave to her its note for that amount with the indorsement of eighteen persons, including Case and McKinnis written on the back. This note matured May 3, 1917, and when it was about to become due McKinnis, according to the testimony of Case, requested Case

"to locate the money to take up the note with * * . I located the money with J. N. Smith. Mr. McKinnis told me if I could locate the money he would sign the note with me to get it"; and "we just merely put our names on it (the 1917 J. N. Smith note) just like we had been doing on the back."

On May 3, 1917, the telephone company by McKinnis as its president and by its secretary made and signed its note for $3,000 payable to the order of J. N. Smith; and McKinnis and Case, in the order named wrote their names on the back of the note. Case delivered the instrument to J. N. Smith and used the money received on that note to take up the Helen Smith note. The note given to J. N. Smith in 1917 matured on May 3, 1918. The telephone company had no money with which to pay the J. N. Smith note; and both Case and McKinnis had knowledge of that fact. When the note was about to mature Smith offered to "continue the loan of $2,500 for another year" if the company reduced the original loan from $3,000 to $2,500 by the payment of $500 in cash and the execution of a new note for $2,500; and Case testified that McKinnis said: "He would sign if I would," just as he had said he would do many times before "with reference to other notes and

obligations of the Union County Telephone Company." The offer was accepted; Smith was paid $500, and the company executed its note for $2,500, thus effecting, to the extent of $2,500 a renewal of the original loan; and as part of the same transaction McKinnis and Case, in the order named, wrote their names on the back of the note.

In May, 1919, McKinnis resided three miles north of Imbler. The plaintiff's postoffice address was Alicel, and, although the record does not inform us as to the location of the place, we infer that Alicel is not far from Imbler. The telephone company maintained its office in Elgin. On May 3, 1919, and subsequently until taken up by Case the Smith note for $2,500 was in the State Bank of Imbler, and was never exhibited to the company at its office or elsewhere; nor was it presented to any officer of the company. May 3, 1919, fell on Saturday, and consequently Monday, May 5th, was the next secular day. H. H. Dickson, the cashier of the State Bank of Imbler, says that he "mailed notices to each party concerned in the note"; and that he · mailed the notices before the day of maturity but with the intention that they should reach the respective parties on the day the note became due. When asked to describe the character of the notices so mailed, Dickson said: "That this note would be due on a certain day, to kindly come in and pay the said amount—the principal of the note and the interest." McKinnis denied that he received any notice. Dickson further declared that as he remembered it, Case called on him on the date the note became due. Case says that the notice, which Dickson intended should be received on the day of the maturity of the note, was the first written notice he received from the

bank, and that he received it "possibly a day or two before the note was due." Case says that he "talked personally with the cashier two or three times,—possibly four times in regard to the note"; that Dickson had talked with him before or about the time the note became due, and that the next time was "sometime around about" the date of maturity. Case told Dickson before the note was due that if the company took up the note it "would have to borrow the money to take it up with." Case also testified:

"I told them we didn't have the money, and we would take it up at the next meeting;—and we kept taking it up at the next meeting,—from one meeting to another, and we would get a notice that the note was past due, and we would take it up at the next meeting."

Case and the company received notices that the note had matured, and these notices were to the effect that the state bank examiner would not permit the loan to run any longer, and "were demanding payment of the note." Case said he could not say just exactly how long it was after the note became due until he received the second written notice but that it "might have been a week and might have been two or three days." Case testified that when "they gave a final notice that the state bank examiner would not permit them to hold the note any longer," he "bought the note from the cashier."

McKinnis knew that the State Bank of Imbler owned the note, and he also knew that the telephone company could not pay the note upon maturity. McKinnis was unwilling to indorse renewals of any of the company notes; for Case "went to McKinnis with three or four notes to renew the notes that he was

indorser on and he refused to renew any of them unless M. S. Levy of Union would put his name on them."

Case did not give any notice to McKinnis on or after May 3, 1919, and no notice was given to McKinnis in behalf of Case until in the spring of 1920, when the latter's attorney wrote to McKinnis concerning the note.

> AFFIRMED AS TO THE UNITED STATES NATIONAL BANK NOTES. REVERSED AND REMANDED AS TO THE SMITH NOTE.

For appellant there was a brief and oral argument by *Mr. J. D. Slater.*

For respondent there was a brief and oral arguments by *Mr. George Cochran* and *Mr. Colon R. Eberhard.*

HARRIS, J.—1. As previously stated the defendant now concedes that as a result of the trial he must contribute one third of the amount paid by the plaintiff to the United States National Bank of La Grande on the two notes held by it, but, relying upon *Baker County* v. *Huntington,* 48 Or. 593, 603 (87 Pac. 1036, 89 Pac. 144), he contends that the judgment ought not to have included interest from the date of the payment by Case to the date of the rendition of the judgment. This contention cannot be sustained. The amount due the bank was fixed by the terms of the notes. The amount due on each of the two notes was definite. The moment the plaintiff paid such definite sum due on the two notes the defendant became liable to the plaintiff for exactly one third of that definite sum; and since section 7988, Or. L., by force of the amendment of 1917, now

provides that interest shall be payable "on all moneys after the same becomes due," the plaintiff was entitled to recover interest. See *Sargent* v. *American Bank and Trust Co.,* 80 Or. 16, 42 (154 Pac. 769, 156 Pac. 431), and *Baillie* v. *Columbia Gold Mining Co.,* 86 Or. 1, 30 (166 Pac. 965, 167 Pac. 1167).

The remainder of the discussion will be confined to the Smith note. The assignments of error are numerous; but we may avoid the necessity of specifically referring to each of them by stating that they present in a variety of forms the contention of the defendant that he is not liable because his status was that of an indorser with only the conditional liability of an indorser; and that since the steps necessary to convert such conditional liability into an absolute liability were neither taken nor waived, he was completely discharged from all liability not only as to the holder but also as to Case. The defendant admits that he and plaintiff signed as joint indorsers, but he denies that he made any other agreement than that which the law writes over joint unqualified irregular indorsements; and he contends that liability on such an agreement does not arise either as to the holder or as to the other joint indorser unless presentment is made to the maker and notice of dishonor is given or waived.

The question of the liability of the defendant presents itself in two general phases: (1) On the note; and (2) on his agreement, express or implied, if any there was, to contribute. The plaintiff avows that this is not an action on the contract of indorsement, or on the note, but is an action to enforce the right of contribution arising out of the fact that he alone paid a liability which both agreed to pay equally, and that therefore defendant ought to be compelled

to pay to plaintiff the share which the defendant ought to have paid to the bank but which the plaintiff was compelled to pay for him. Even though it be assumed that the defendant expressly agreed to indemnify or reimburse the plaintiff or even though this action must be treated as one to enforce the equitable right of contribution, in either event, the liability, if any, of the defendant cannot be ascertained unless we first determine the nature and extent of his liability on the note; and this involves an inquiry concerning his status as a party to the note considered with relation (1) to the State Bank of Imbler, and (2) to Case.

2. The negotiable instruments law was adopted in this state in 1899 (Laws, 1899, p. 18), and where the act speaks it controls: *Hunter* v. *Harris,* 63 Or. 505, 508 (127 Pac. 786); *Mechanics etc. Bank* v. *Katterjohn,* 137 Ky. 427 (125 S. W. 1071, Ann. Cas. 1912A, 439); *First National Bank* v. *Bach,* 98 Or. 332, 336 (193 Pac. 1041). The section numbers in the act of 1899, with only a few exceptions, conform with the numbering of the uniform negotiable instruments law as it appears in the standard text-books and as it is found in most of the states which have adopted it; and so for convenience a given section when first referred to will be designated by both its Code number and by the number given to it under the act of 1899, but the latter number whenever used, whether alone or in combination with the Code number, will always be placed in parentheses.

Probably no question concerning negotiable instruments has been the subject of more confusion and greater diversity of judicial opinion than that of the liability of a third person, not otherwise a party to a promissiry note, who prior to delivery

signs the instrument on its back in blank and the note is payable to a specified person or order. Prior to the adoption of the negotiable instruments law the liability as such a signer was variously held to be that of a maker, guarantor, indorser or second indorser. In many of the jurisdictions the liability was that of a maker. This confusion was worse confounded by the fact that in some jurisdictions the liability was only *prima facie* that of a given relation; so that parol evidence was admissible to show a different intention, while in other jurisdictions the liability was conclusively that of a given relation and parol evidence was not receivable to show a different relation: 8 C. J. 74; *Lumbermen's National Bank* v. *Campbell,* 61 Or. 123, 127 (121 Pac. 427). Although this confusion was not the only reason for the adoption of the negotiable instruments law it was with all the states adopting it one of the very persuasive reasons: *Thompson* v. *Curry,* 79 W. Va. 771 (91 S. E. 801). The negotiable instruments law has definitely fixed the relation of such a signer; for sections 7855, Or. L. (§ 63), and 7856, Or. L. (§ 64), read as follows:

"§ 7855. Who Deemed to be an Indorser. A person placing his signature upon an instrument otherwise than as a maker, drawer, or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity.

"7856. Blank Indorsement, Liability Thereon. Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery, he is liable as indorser, in accordance with the following rules: (1) If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties; (2) if the instrument is payable to the order of the maker or drawer, or is

payable to bearer, he is liable to all parties subsequent to the maker or drawer; (3) if he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee.''

3. Case and McKinnis did not place their names on the note as makers; nor did they indicate by any words an intention to be bound in any capacity other than as indorsers; and therefore by force of section (63) they are deemed to be indorsers: *Noble* v. *Beeman-Spaulding-Woodward Co.,* 65 Or. 93, 102 (131 Pac. 1006, 46 L. R. A. (N. S.) 162); and not being otherwise a party to the instrument and having placed on the note their signatures in blank before delivery they are by force of section (64) liable as indorsers in accordance with the rules of that section. The negotiable instruments law has made certain and fixed that which was before uncertain and variable. The language of section (63) is to be taken in its literal sense: *Lightner* v. *Roach,* 126 Md. 474 (95 Atl. 62). These two sections of the statute conclusively determine the relation sustained by Case and McKinnis to the instrument: *Overland Auto Co.* v. *Winters* (Mo. App.), 180 S. W. 562; *First National Bank* v. *Bickel,* 143 Ky. 754 (137 S. W. 790); *Nolan* v. *H. E. Wilcox Co.,* 137 Tenn. 667 (195 S. W. 581). While it has been said that the true fact may always be shown between the original parties (*Nolan* v. *Brown,* — La. —, 93 South. 113), no question arises here as to whether the litigants intended as between themselves to assume the liability of a maker, for there is no evidence to support a finding that they intended to bear the burden of a maker. See, also, *Lee* v. *Boykin,* 114 S. C. 480 (103 S. E. 777, 11 A. L. R. 1328). Moreover it is alleged by Case and admitted by McKinnis that they signed as joint indorsers, and

so far as the State Bank of Imbler is concerned they stood in the position of indorsers and not makers. In brief, the position occupied by Case and McKinnis on the note was that of joint indorsers both as to the holder and also as between themselves. Only a very few cases can be found, probably not more than three, holding directly or indirectly that sections (63) and (64) merely create a disputable presumption so that a holder may by oral evidence show that a seemingly irregular indorser is in truth a joint maker and therefore primarily liable to the holder: See Brannan on The Negotiable Instruments Law (3 ed.), 239, 242; *Bennet* v. *Kistler,* 163 N. Y. Supp. 555; *McDonald* v. *Lukenbach,* 170 Fed. 434 (95 C. C. A. 604). However, one of the three cases has been overruled, one reversed, and the other criticised and not followed; and so it can now be said that in every jurisdiction where the negotiable instruments law is in effect the statute absolutely and conclusively fixes the status of an irregular or anomalous indorser to be that of an indorser and parol evidence of a different intention is not admissible: *Baumeister* v. *Kuntz,* 53 Fla. 340 (42 South. 886); *Hopkins* v. *Commercial Bank,* 64 Fla. 310 (60 South. 183); *Eaves* v. *Keeton,* 196 Mo. App. 424 (193 S. W. 629); *Porter* v. *Moles,* 151 Iowa, 279 (131 N. W. 23); *Lyons Lumber Co.* v. *Stewart,* 147 Ky. 653 (145 S. W. 376); *Neasho Milling Co.* v. *Farmers' Co-op. Warehouse Stock Co.,* 130 La. 949 (58 South. 825); *Long* v. *Gwin,* 202 Ala. 358 (80 South. 440); *Lightner* v. *Roach,* 126 Md. 474 (95 Atl. 62); *Tucker* v. *Mueller,* 287 Ill. 551 (122 N. E. 847); *Ensign* v. *Fogg,* 177 Mich. 317 (143 N. W. 82); *Meyers* v. *Battle,* 170 N. C. 168 (86 S. E. 1034); *Thompson* v. *Curry,* 79 W. Va. 771 (91 S. E. 801); *Muntz* v. *Schmidt,* 213 Ill. App. 641; *Farmer's &*

*Merchant's Bank* v. *Kingwood National Bank,* 85
W. Va. 371 (101 S. E. 734); *Cole* v. *George,* 86 W. Va.
346 (103 S. E. 201); *Geller, Ward & Hasner Hard-
ware Co.* v. *Drozda,* 203 Mo. App. 91 (217 S. W. 557);
*Deahy* v. *Choquet,* 28 R. I. 338 (67 Atl. 421, 14
L. R. A. (N. S.) 847); *Rockfield* v. *First National
Bank,* 77 Ohio St. 311 (83 N. E. 392, 14 L. R. A.
(N. S.) 842); *Bank of Montpelier* v. *Montpelier
Lumber Co.,* 16 Idaho, 730 (102 Pac. 685). The note
was made payable to the order of Smith and indorsed
in blank before delivery; and hence Case and Mc-
Kinnis were liable as indorsers and only as indorsers
to the State Bank of Imbler, the subsequent party.

Since the liability of Case and of McKinnis to the
State Bank of Imbler was that of an indorser, the
next inquiry is: What is the liability of an indorser
to such a holder? The question is answered by
Section 7858, Or. L. (§ 66), for it is there declared
that:

"Every indorser who indorses without qualifica-
tion warrants to all subsequent holders in due
course * * . And, in addition, he engages that, on
due presentment, it shall be * * paid, * * according
to its tenor, and that if it be dishonored, and the
necessary proceedings on dishonor be duly taken, he
will pay the amount thereof to the holder or to any
subsequent indorser who may be compelled to pay
it."

4. This section prescribes the terms of the contract
of indorsement, and therefore an indorser agrees to
pay the amount of the note to the holder, but this
agreement to pay is conditioned (1) on due present-
ment; and (2) notice of dishonor. The indorser is
contingently liable; and the fact of maturity plus the
fact of nonpayment by the maker do not produce
liability. The contract of indorsement calls for pre-

sentment for payment and notice of dishonor and these terms of the contract must, unless waived, be complied with in order to render the indorser liable: *Grapes* v. *Willoughby*, 93 Vt. 458 (108 Atl. 421); *Tucker* v. *Mueller*, 287 Ill. 551 (122 N. E. 847); *Ingals* v. *Marston*, 121 Me. 182 (116 Atl. 216); *Williams* v. *Paintsville National Bank*, 143 Ky. 781 (137 S. W. 535, Ann. Cas. 1912D, 350); *State National Bank* v. *Vickery*, — Tex. —, 206 S. W. 841; *Hastings* v. *Gump*, 89 W. Va. 111 (108 S. E. 600). The steps necessary to bind an indorser are presentment for payment, refusal to pay, and notice of dishonor. The contingent liability does not become a consummated liability unless these steps are taken or unless they are waived; and therefore by force of sections (63), (64) and (66) a person who signs in blank before delivery for the accommodation of the maker is now an indorser and is liable to the payee and subsequent parties only after notice of presentment and notice of dishonor: *Canada* v. *Shuttes* (Mo. App.), 235 S. W. 624; *Peck* v. *Easton*, 74 Conn. 456 (51 Atl. 134); *Baumeister* v. *Kuntz*, 53 Fla. 340 (42 South. 886); *Thorpe* v. *White*, 188 Mass. 333 (74 N. E. 592); *Toole* v. *Crafts*, 193 Mass. 110 (78 N. E. 775, 118 Am. St. Rep. 455); *Gibbs* v. *Guaraglia*, 75 N. J. L. 168 (67 Atl. 81); *Far Rockaway Bank* v. *Norton*, 186 N. Y. 484 (79 N. E. 709); *Perry Co.* v. *Taylor Bros.*, 148 N. C. 362 (62 S. E. 423); *Farquahar* v. *Higham*, 16 N. D. 106 (112 N. W. 557); *McLean* v. *Bryer*, 24 R. I. 599 (54 Atl. 373); *Grapes* v. *Willoughby*, 93 Vt. 458 (108 Atl. 421); *Ingalls* v. *Marston*, 121 Me. 182 (116 Atl. 216).

5. Presentment is the first essential step. Presentment for payment is not necessary in order to

charge the person primarily liable on the instrument, but section 7862, Or. L. (§ 70) declares that:

"Except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and indorsers."

*Overland Auto Co.* v. *Winters* (Mo. App.), 180 S. W. 561; *First National Bank* v. *Sandmeyer,* 164 Ill. App. 98; *Long* v. *Todd,* 207 Mo. 496 (226 S. W. 262); *Perry Co.* v. *Taylor Bros.,* 148 N. C. 362 (62 S. E. 423); *Willard State Bank* v. *Clark,* 111 Kan. 439 (208 Pac. 549). "Where the instrument is not payable on demand, presentment must be made on the day it falls due." Section 7863, Or. L. (§ 71). "The instrument must be exhibited": Section 7866, Or. L. (§ 74); and presentment must be made to the person primarily liable and at the place specified in the instrument: Sections 7864, Or. L. (§ 72), and 7865 (§ 73). Instruments like the Smith note, when falling due on Saturday are to be presented for payment on the next succeeding business day: Section 7877, Or. L. (§ 85).

6. If the instrument is not paid notice of dishonor is the second essential step. Section 7881, Or. L. (§ 89) reads thus:

"Except as herein otherwise provided, when a negotiable instrument has been dishonored by * * non-payment, notice of dishonor must be given to * * each indorser, and any * * indorser to whom such notice is not given is discharged."

7, 8. The notice may be oral or written and may be given personally or through the mails: Section 7888, Or. L. (§ 96); but, although notice may be given as soon as the instrument is dishonored, it must, if the person giving and the person to receive notice reside

in the same place, be given on the following day, or, if sent by mail, be deposited in the postoffice in time to reach the indorser in the usual course on the day following; but if the parties reside in different places the notice must if sent by mail be deposited in time to go by mail the day following the day of dishonor, or if there be no mail at a convenient hour on that day, by the next mail thereafter, or if given otherwise than through the postoffice then within the time that notice would have been received in due course of mail if it had been deposited in the postoffice within the time specified for giving notice by mail: Sections 7894, Or. L. (§ 102), 7895, Or. L. (§ 103), 7896, Or. L. (§ 104). Subject to excuse for delay and to the exceptions specified in the act and to waiver, an indorser does not become liable to the holder unless presentment for payment is made and notice of dishonor is given at the time and place specified in the statute; and therefore notice to the maker before maturity reminding him of the date when the note is to fall due is not such a presentment for payment as will furnish a basis for the indorser's liability: *Willard State Bank* v. *Clark,* 111 Kan. 439 (208 Pac. 549). Nor is the sending of notice before maturity to all parties to the note such notice of dishonor as is required by the statute: *Mechanics' etc. Bank* v. *Katterjohn,* 137 Ky. 427 (125 S. W. 1071, Ann. Cas. 1912A, 439).

The negotiable instruments law excuses delay in making presentment or in giving notice of dishonor when caused by circumstances beyond the control of the holder: Section 7873, Or. L. (§ 81), section 7905, Or. L. (§ 113). Presentment may be waived, and the waiver may be express or implied: Section 7874, Or. L. (§ 82); *In re Swift,* 106 Fed. 65; *Bank of*

*Montpelier* v. *Montpelier Lumber Co.,* 16 Idaho, 730 (102 Pac. 685, 33 L. R. A. (N. S.) 868); *Helfrich* v. *Snyder,* 269 Pa. 527 (112 Atl. 749). Notice of dishonor may also be expressly or impliedly waived, and the waiver may be either before the time of giving notice has arrived or after the omission to give due notice: Section 7901, Or. L. (§ 109).

Section (70) commands that presentment is necessary "except as herein otherwise provided"; and Section 7872, Or. L. (§ 80) provides that:

"Presentment for payment is not required in order to charge an indorser, where the instrument was made or accepted for his accommodation, and he has no reason to expect that the instrument will be paid if presented."

Section (89) commands that:

"Except as herein otherwise provided" notice of dishonor must be given to the indorser; and Section 7907, Or. L. (§ 115) provides that:

"Notice of dishonor is not required to be given to an indorser in either of the following cases: * * (3) Where the instrument was made or accepted for his accommodation."

The holder in order to recover from an indorser must by a proper pleading allege and by sufficient evidence prove that he presented the instrument for payment and gave notice of dishonor at the time and place prescribed by the statute; or if delayed he must allege and prove sufficient excuse for the delay; or if presentment is not made or notice is not given because of a waiver, the holder ought to allege and prove such waiver: *Robinson* v. *Holmes,* 57 Or. 5, 7 (109 Pac. 754); *First National Bank* v. *Bach,* 98 Or. 332, 339 (193 Pac. 1041); *Galbraith* v. *Shepard,* 43 Wash. 698 (86 Pac. 1113); *Hastings* v. *Gump,* 89 W. Va. 111 (108 S. E. 600).

The record in the instant case discloses that due presentment was not made to the maker; that notice of dishonor was not given to Case; that notice of dishonor was not given to McKinnis at the required time; that the delay in not giving notice to McKinnis until the spring of 1920 cannot be excused; and, consequently, if liability to the holder was ever fastened upon Case and McKinnis, or upon either of them, it was only because of waiver or because they were accommodated rather than accommodation indorsers.

9. It is not necessary to comment upon whether Case by his conduct waived presentment and notice nor to discuss the rules applicable for determining when waiver is effected, but it is sufficient to direct attention to the following precedents and to state that throughout the discussion we shall assume without deciding that as between the State Bank of Imbler and Case the record contains enough evidence to support a finding of waiver: *Mechanics' etc. Bank* v. *Katterjohn,* 137 Ky. 427 (125 S. W. 1071, Ann. Cas. 1912A, 439); *Bank of Montpelier* v. *Montpelier Lumber Co.,* 16 Idaho, 730 (102 Pac. 685, 33 L. R. A. (N. S.) 868); *Thompson* v. *Curry,* 79 W. Va. 771 (91 S. E. 801); *Helfrich* v. *Snyder,* 269 Pa. 527 (112 Atl. 749); *Whitney* v. *Chadsey,* 216 Mich. 604 (185 N. W. 826). However, there is nothing from which it can be argued that McKinnis waived presentment or notice, except the fact that he was a stockholder and possibly a director at the time the note matured and knew that the corporation maker was unable to pay; but these facts do not of themselves effect a waiver, and therefore McKinnis' contingent liability as an indorser was never developed into a complete liability to the bank, unless he was an ac-

commodated indorser: *Grandison* v. *Robertson,* 231
Fed. 785 (145 C. C. A. 605); *McDonald* v. *Luckenbach,*
170 Fed. 434 (95 C. C. A. 604), overruling *Lucken-
bach* v. *McDonald,* 164 Fed. 296. As was ruled in
*Nolan* v. *H. E. Wilcox Motor Co.,* 137 Tenn. 667, 677
(195 S. W. 581), insolvency of the maker known to
the holder and to the indorser does not excuse de-
mand and notice even though the indorser is one of
the principal stockholders and president of the cor-
poration maker and even though the indorser in-
dorsed the note of the insolvent for the purpose of
giving it credit, for "no such exception is made in the
negotiable instruments law." See, also: *Haynes
Automobile Co.* v. *Shepherd,* 220 Mich. 231 (189 N. W.
841).

The record makes it plain that neither Case nor
McKinnis could have had any reason to expect pay-
ment by the maker upon presentment, and if the
note was made for their accommodation Section 7872,
Or. L (§ 80) dispensed with presentment; and by
force of Section 7907, Or. L. (§ 115) "notice of dis-
honor is not required to be given to an indorser * *
(3) where the instrument was made or accepted for
his accommodation." The statute advises us who is
an accommodation party, and it prescribes his lia-
bility. Section 7821, Or. L. (§ 29) is as follows:

"An accommodation party is one who has signed
the instrument as * * indorser, without receiving
value therefor, and for the purpose of lending his
name to some other person. Such a person is liable
on the instrument to a holder for value, notwithstand-
ing such holder at the time of taking the instru-
ment knew him to be an accommodation party."

It will be observed that the language is *"the in-
strument * * without receiving value therefor."*

*Morris County Brick Co.* v. *Austin,* 79 N. J. L. 273
(75 Atl. 550); Brannan's The Negotiable Instruments Law (3 ed.), 115.

10. Where the officers or stockholders of a corporation acting as individuals indorse its note before delivery and all the proceeds are received by the corporation the note is not made for the accommodation of the individuals even though they happen to be officers or stockholders: *First National Bank* v. *Bickel,* 143 Ky. 754 (137 S. W. 790); *Nolan* v. *H. E. Wilcox Motor Co.,* 137 Tenn. 667, 677 (195 S. W. 581), overruling *Mercantile Bank* v. *Busby,* 120 Tenn. 652 (113 S. W. 390); *McDonald* v. *Luckenbach,* 170 Fed. 434 (95 C. C. A. 604); *Mechanic* v. *Elgie Iron Works,* 98 Misc. Rep. 620, 163 N. Y. Supp. 97; *Murray* v. *Third National Bank,* 234 Fed. 481 (148 C. C. A. 247); *Bennet* v. *Kistler,* 163 N. Y. Supp. 555; *Crane* v. *Downs,* 108 Kan. 599 (196 Pac. 600); *Frazee* v. *Phoenix National Bank,* 161 Ky. 175 (170 S. W. 532); *Grandinson* v. *Robertson,* 231 Fed. 785 (145 C. C. A. 605). See, also: *Overland Auto Co.* v. *Winters,* 277 Mo. 425 (210 S. W. 1), (Mo. App.), 180 S. W. 561); *Geller, Ward & Hasner Hardware Co.* v. *Drozda,* 203 Mo. App. 91 (217 S. W. 557); *First National Bank* v. *Bach,* 98 Or. 332 (193 Pac. 1041).

It is a question of fact whether an indorser is personally accommodated; and, although the fact may be shown by words on the note or otherwise, the circumstances that he is a stockholder or officer of the corporation maker does not create a presumption that the note indorsed by him was for his accommodation: *Tucker* v. *Mueller,* 287 Ill. 551. The corporation is an entity and in any transaction like the one involved here it is as distinct from its officers and

stockholders as it is from third persons with whom it transacts business, and, consequently officers and stockholders who as irreguluar indorsers lend to the corporation maker the credit of their individual names are entitled to the same right of presentment and notice as attaches to any other indorser. The mere fact that the indorser may be indirectly benefited or interested because he is a stockholder does not make him an accommodated party. If the proceeds are received by the corporation maker, the debt is the debt of the corporation and not primarily the debt of the stockholder indorser. In the instant case the corporation received all the money loaned by Smith; and the stockholder indorsers never received any of it. The value received for the instrument was received by the corporation. The sole purpose of the indorsers was to lend the credit of their names and they did nothing to indicate any other purpose. Case and McKinnis occupied the status of accommodation indorsers and therefore were entitled to all the rights of indorsers: *McDonald* v. *Luckenbach,* 170 Fed. 434 (95 C. C. A. 604); *Hauser* v. *Fayssoux,* 168 N. C. 1 (83 S. E. 692, Ann. Cas. 1917B, 835); *Crane* v. *Downs,* 108 Kan. 599 (196 Pac. 600). See, also: *Frazee* v. *Phoenix National Bank,* 161 Ky. 175 (170 S. W. 532); *Geller, Ward & Hasner Hardware Co.* v. *Drozda,* 203 Mo. App. 91 (217 S. W. 557); *First Nat. Bank* v. *Sandmeyer,* 164 Ill. App. 98; *Nolan* v. *Brown* (La.), 93 South. 113.

The liability of a joint indorser to the holder may under our statute be joint only, or several only, or joint and several, depending upon the facts. Prior to the negotiable instruments law it was generally held that if two or more persons signed as joint indorsers none could be compelled to pay the holder unless

notice was given to all or waived by all; because the contract of indorsement involved only a contingent joint liability which was governed by common law principles applicable to joint contracts. Since one of two indorsers was not, unless a partner or specially authorized, an agent of the other, notice to one did not operate as notice to the other; and therefore if only one received notice all were discharged: *Willis* v. *Green,* 5 Hill, 232 (40 Am. Dec. 351); *Miser* v. *Trovinger,* 7 Ohio St. 281; *Sayre* v. *Frick,* 7 Watts & S. 383 (42 Am. Dec. 249); *Boyd* v. *Orton,* 16 Wis. 496; *Medlock* v. *Wood,* 4 Ga. App. 368 (61 S. E. 516); *United States Bank* v. *Beirne,* 1 Gratt. (Va.) 234 (42 Am. Dec. 551); *Gantt* v. *Jones,* 9 Fed. Cas. No. 5213 (1 Cranch C. C. 210); *Shepard* v. *Hawley,* 1 Conn. 367 (6 Am. Dec. 244); *Bowie* v. *Hume,* 13 App. Cas. D. C. 286; *Ryhiner* v. *Flickert,* 92 Ill. 365 (34 Am. Rep. 130); *State Bank* v. *Slaughter,* 7 Blackf. (Ind.) 133; *People's Bank of Baltimore* v. *Keech,* 26 Md. 521 (90 Am. Dec. 118); *Dabney* v. *Stidger,* 12 Miss. 749; *Northrup* v. *Chambers,* 90 Mo. App. 61; *Cayuga* v. *Warden,* 6 N. Y. 19; 8 C. J. 644.

Usually parol evidence was receivable to show that indorsers signed jointly regardless of the order in which their names appeared, and the result sometimes was that the holder, relying on the appearance of the paper and being ignorant of the real facts, gave notice only to the seemingly last and successively liable indorser and by so doing lost all right of recovery upon proof being made that the indorser so notified signed jointly with one or more other indorsers: *Williams* v. *Paintsville National Bank,* 143 Ky. 781 (137 S. W. 535, Ann. Cas. 1912D, 350); 8 C. J. 644. The negotiable instruments law in a

large measure remedied this situation by Section 7860, Or. L. (§ 68) which reads as follows:

"§ 7860. Order of Indorsers' Liability. As respects one another, indorsers are liable *prima facie* in the order in which they indorse, but evidence is admissible to show that as between or among themselves they have agreed otherwise. Joint payees or joint indorsees who indorse are deemed to indorse jointly and severally."

It will be observed that the language of Section (68) as written in this state is "joint payees or joint indorsees," and not "joint payees or joint indorsers." In Alaska and in eight of the states of the Union the language employed in Section (68) is "joint payees or joint indorsers." Session Laws of Alaska, 1913, Ch. 64, Section 68; Statutes and Amendments to the Codes of California, 1917, p. 1543, Sec. 3149; Extra Session 1916, Sec. 3149; Revised Code of Delaware (1915), Sec. 2712; 2 West Virginia Code (C. E. Hogg, 1913), Sec. 4239; The Compiled Statutes of Nebraska (1922), Sec. 4679; Vol. 1, Pell's Revisal of 1908, North Carolina, Sec. 2217; Ohio General Code, Annotated (Throckmorton), Sec. 8173; Vol. 1, Revised Laws of Oklahoma (1910), Sec. 4118; Compiled Laws of Utah (1917), Sec. 4102. In Illinois the language is, "all parties jointly liable on a negotiable instrument are deemed to be jointly and severally liable." Vol. 4, Illinois Statutes Annotated, Sec. 7707. However, in all the other states of the Union, as well as in the District of Columbia, Hawaii and the Philippines, Section (68) of the negotiable instruments law is worded exactly the same as it is in Oregon. In this connection it is appropriate to observe that in *Williams* v. *Paintsville National Bank,* 143 Ky. 781 (137 S. W. 535, Ann.

Cas. 1912D, 350), the court quotes Section (68) as reading thus:

"Joint payees or joint indorsers who indorsed are deemed to indorse jointly and severally";

and based on the assumption that the statute is correctly quoted it is subsequently stated in the opinion, "by our statute all parties jointly liable may be sued severally or jointly." However, the Kentucky statute is in reality the same as that of Oregon. The negotiable instruments law as originally adopted is found in acts of 1904, page 228, Ch. 102; and Section (68) as there printed, reads:

"Joint payees or joint indorsees who indorse are deemed to indorse jointly and severally."

Section (68) appears as Section 1937 in Statutes of Kentucky (Russell 1909), and there the word "indorsers" is found instead of the word "indorsees." Apparently the quotation appearing in *Williams* v. *Paintsville National Bank* was taken from the Code of 1909 and manifestly the compilation of 1909 was incorrect because the word is "indorsees" not only in the act of 1904 but also in the last printed Code, Volume 2, Kentucky Statutes (Carroll 1915), Ch. 90b, § 3720b, Sec. 68. If Case and McKinnis were joint payees or joint indorsees who had indorsed they would be deemed to have indorsed jointly and severally; but before the contingent secondary liability, whether joint or several, could be converted into an absolute joint or several liability notice of dishonor would have to be given. The secondary several liability of a joint indorser coming within Section (68) becomes absolute when he receives notice of dishonor, but the contingent joint liability of the joint indorsers does not become absolute unless notice

of dishonor is given to all or waived by all, for Section 7892, Or. L. (§ 100) provides:

"§ 7892. Notice to Each of Joint Parties. Notice to joint parties who are not partners must be given to each of them, unless one of them has authority to receive such notice for the others."

If only one of two or more joint indorsers embraced by Section (68) is notified the contingent joint liability to the holder is dissolved, although the contingent several liability of the indorser notified is transformed into an absolute several liability to the holder. Notice when given only to one joint payee or joint indorsee who indorses binds him but discharges the other joint indorsers from any liability to the holder: *Jarnagin* v. *Stratton,* 95 Tenn. 619 (32 S. W. 625, 30 L. R. A. 495); *Williams* v. *Paintsville National Bank,* 143 Ky. 781 (137 S. W. 535, Ann. Cas. 1912D, 350); *Eaves* v. *Keeton,* 196 Mo. App. 424 (193 S. W. 629); *Doherty* v. *First National Bank,* 170 Ky. 810 (186 S. W. 937). Any joint indorser who comes within Section (68) and waives presentment and notice, renders himself severally liable; but he cannot waive the right of the other joint indorsers and make them either severally or jointly liable to the holder: *Deahy* v. *Choquet,* 28 R. I. 338 (67 Atl. 421, 14 L. R. A. (N. S.) 847).

11. Case and McKinnis did not assume a contingent joint and several liability. They were joint indorsers it is true; but they were not joint indorsees who indorsed, and therefore they assumed no liability except a secondary joint liability, and the failure to give notice of dishonor to McKinnis operated as a discharge of both Case and McKinnis, even though it be assumed that Case waived presentment and notice. If Case and McKinnis were joint payees who

indorsed, or if they were joint indorsees who indorsed, then they would by force of Section (68) be deemed to have indorsed jointly and severally with the result that the holder could, by taking the proper steps, have held either or both of them. If our statute employed the word "indorsers" instead of the word "indorsees" as do eight of the states, then the holder could, by taking the necessary steps, have held Case and McKinnis or either of them, but the language of Section (68) does not include Case or McKinnis because they were neither payees nor indorsees. Case and McKinnis were joint indorsers with a contingent joint liability. Neither of them was severally liable to the holder. The contingent joint liability never became an absolute liability; and, since the holder failed to transform the contingent joint liability into an absolute joint liability, both Case and McKinnis were discharged from all liability to the holder, and payment by Case to the bank was not the payment of a legal liability. Hence, Case cannot recover from McKinnis unless he can show that the latter expressly or impliedly waived presentment and notice and thus, together with a waiver by Case, created a joint legal liability which the bank could have enforced.

Although Case and McKinnis wrote their names on the back of the Smith note as joint indorsers with only a contingent joint liability, we shall nevertheless assume for the purposes of further discussion that by their indorsement they "are deemed to indorse jointly and severally." The oral arguments and briefs have proceeded upon the assumption that Case and McKinnis as joint indorsers incurred a contingent joint and several liability. The contention of the plaintiff goes on the theory that he and the de-

fendant by signing as joint indorsers made themselves as between themselves sureties; that when he paid the bank he paid a legal liability; and that under the doctrine of contribution he is entitled to call upon his cosurety, the defendant, to contribute his share, or one half, even though the holder could not have compelled McKinnis to pay. A consideration of the rules regulating the rights and duties of indorsers as between and among themselves and an examination of the doctrine of contribution will aid the investigation of this contention made by the plaintiff.

12. If indorsers occupy the position of prior and subsequent indorsers with a successive liability and the holder takes the necessary steps to bind the last indorser, then obviously that indorser can in turn bind an indorser antecedent to him even though the holder did nothing to bind such antecedent indorser, for Section 7899, Or. L. (§ 107) provides.:

"§ 7899. Time of Notice by Party to Antecedent Party. Where a party receives notice of dishonor, he has, after the receipt of such notice, the same time for giving notice to antecedent parties that the holder has after the dishonor."

Antecedent indorsers successively liable, whether regular or irregular and whether business or accommodation indorsers, may by notice be made liable *in solido* to a subsequent indorser who pays the note after presentment and notice:. *Porter* v. *Huie,* 94 Ark. 333 (126 S. W. 1069, 28 L. R. A. (N. S.) 1039). If, however, neither the holder nor the subsequent indorser takes the necessary steps to bind such antecedent indorser, then manifestly the latter, if his liability is successive, is discharged from all liability

on the note, and neither the holder nor the subsequent indorser can recover from him.

By force of Section (68) indorsers are *prima facie* liable in the order in which they indorse; but evidence is admissible 'to show that they have agreed otherwise. They may as to the holder stand in the relation of prior and subsequent indorsers with a successive liability, but by force of an agreement be liable among themselves equally or otherwise; or they may as to the holder stand in the position of joint indorsers but among themselves by agreement make only one or a part of them ultimately liable. It was held in *Williams* v. *Paintsville National Bank,* 143 Ky. 781 (137 S. W. 535, Ann. Cas. 1912D, 350), that antecedent parties within the meaning of Section (107) are those antecedent in liability, and to whom the person giving the notice has a right to look for reimbursement; that the section is not confined to those who are antecedently liable for the whole of the debt, but that it applies to all who are antecedent as to any part of it. The doctrine of this case is approved in *Eaves* v. *Keeton,* 196 Mo. App. 424 (193 S. W. 629), and is cited as authoritative in Brannan's Negotiable Instruments Law (3 ed.), 299, and in Crawford's Negotiable Instruments Law, 181. Under this ruling any joint indorser governed by Section (68) if alone made liable to the holder can protect himself by giving notice of dishonor to other joint indorsers who are liable to or with him, just as he can protect himself by giving notice of dishonor to a prior indorser when the liability of the indorsers among themselves is *in solido* and successive; and, furthermore, under this ruling notice by the holder to only one indorser discharges the other indorsers from any liability to the holder, and the indorser so notified

by failing to give notice of dishonor to the other joint indorsers discharges all of them, so that the other joint indorsers are themselves discharged from all liability on the contract of indorsement not only as to the holder but also as to the one indorser.

The plaintiff relies upon the doctrine of contribution. This doctrine is founded upon principles of equity and natural justice and in reality is not based upon contract. It had its origin in courts of equity. Equality was deemed to be equity; and so when one was compelled to pay the whole of a debt which two or more owed either jointly or severally or jointly and severally equity equalized the burden by compelling the other obligors to pay their respective shares and thus divide the burden. While the doctrine of contribution originated in courts of equity it was subsequently adopted by courts of law and is now universally applied in such courts. In order to make the doctrine consistent with the forms, theories and practices of courts of law it was said that the law implied a contract by one obligor to contribute to another co-obligor who had been compelled to pay the whole obligation. When resolved to its final analysis the injection of this notion of implied contract is only resorting to a fiction for in reality all the essential elements of a contract are not present.

13. To entitle one co-obligor to contribution from the other co-obligors the payment made by him must have been compulsory; and this means that he must have been under legal obligation to pay: 13 C. J. 821; 6 R. C. L. 1035; *Van Winkle* v. *Johnson*, 11 Or. 469 (5 Pac. 922, 50 Am. Rep. 495); *Durbin* v. *Kuney*, 19 Or. 71 (23 Pac. 661). Case did not plead any facts from which the court could induce the legal

conclusion that an enforcible legal oblgation existed against him. The complaint merely stated that Case was compelled to pay. Case ought to have pleaded whatever facts he relied upon to show the existence of an enforceable obligation.

14. Waiver may be (1) before the time for presentment and notice, or (2) after such time. If Case waived notice and presentment and his waiver occurred after the time prescribed by the statute, then it occurred after the discharge of both Case and McKinnis from liability to the holder. If Case and McKinnis were joint indorsers with only a contingent joint liability to the holder, and they were, then the failure of the holder to give notice to McKinnis discharged both Case and McKinnis, even though Case waived presentment and notice and subsequently paid the bank; and when Case paid the note he did not pay an enforceable legal obligation and consequently cannot have contribution from McKinnis: *Willis* v. *Green*, 5 Hill (N. Y.), 232 (40 Am. Dec. 351); *Medlock* v. *Wood*, 4 Ga. App. 368 (61 S. E. 516). If it be assumed that Case and McKinnis as joint indorsers subjected themselves to a contingent joint and several liability and that they were both discharged by the omission of presentment and notice and that after such discharge Case waived such omission and paid the note, he nevertheless cannot call upon McKinnis to contribute, even though Case by his own acts revived his own personal liability: *Shepard* v. *Hawley*, 1 Conn. 367 (6 Am. Dec. 244); *Bowie* v. *Hume*, 13 App. Cas. (D. C.) 286; *Bennet* v. *Kistler*, 163 N. Y. Supp. 555; *Higgins* v. *Morrison*, 4 Dana (Ky.), 100; *Gantt* v. *Jones*, 1 Cranch C. C. 210 (Fed. Cas. No. 5213). If both were discharged by failure

107 Or.—17

to make demand and give notice, one cannot subsequently waive and pay and by such waiver and payment render the other liable to contribute. The germ of liability dies with the discharge of both indorsers, and although one indorser may revive it as to himself he cannot resuscitate it as to the other indorser.

If it be assumed that Case and McKinnis were joint indorsers with a contingent joint and several liability, and that Case waived presentment and notice before the time for presentment and notice arrived and thus prevented his own discharge and rendered himself directly and absolutely liable to the holder when at maturity the maker failed to pay, we have a situation where one joint indorser is under a several liability to the holder, while McKinnis the other joint indorser is completely discharged from both a joint and several liability to the holder. Is the right of contribution lost to a paying coindorser unless the other of two coindorsers receives notice of dishonor? In a note following the opinion in *Owens* v. *Greenlee,* 9 A. L. R. 1188, the editor correctly states:

"There is very little authority upon the necessity or protest and notice as between coindorsers of negotiable paper."

*Owens* v. *Greenlee,* 68 Colo. 114 (188 Pac. 721, 9 A. L. R. 1184), is a notable example of the very few precedents which hold that notice is not necessary. There are a few other adjudications which directly or indirectly support the view expressed in *Owens* v. *Greenlee. Sloan* v. *Gibbes,* 56 S. C. 480 (35 S. E. 408, 76 Am. St. Rep. 559), is relied upon to support the contention of plaintiff; but in that case the court found as a fact that the parties agreed when they indorsed the note to become liable to each other as cosureties in the event of payment by either, and the

court held that notice is not necessary if the parties made a special agreement for contribution as a surety. The case of *Kerr's Estate,* 17 Pa. Co. Ct. 193 (4 Pa. Dist. R. 696), is materially weakened by a strong and well-reasoned dissenting opinion.

There are a few adjudicated cases which at first blush might seem to fall in a class with *Owens* v. *Greenlee,* but upon analysis it will be found that they were based upon an agreement made at the time of indorsement dispensing with notice; as, for example, *Barclay* v. *Weaver,* 19 Pa. St. 396 (57 Am. Dec. 661), where the holder was permitted to prove that at the time of indorsement it was agreed by the maker, indorser, and holder that payment need not be demanded: *Marquardt's Estate,* 251 Pa. St. 73 (95 Atl. 917), where, following *Barclay* v. *Weaver, supra,* it was held that—

"A party may prove by oral testimony that at the time of the indorsement of a promissory note, it was agreed that the indorser would be absolutely bound for the payment of it without the usual demand and notice";

*Friedman* v. *Maltinsky,* 260 Pa. St. 312 (103 Atl. 731), where it not only appeared that the jury found that the defendant received notice mailed to him, but it also appeared that the parties at the time of indorsement entered into a written agreement to the effect that among themselves each would pay one sixth of whatever loss might result from the indorsement.

The case of *Bennet* v. *Kistler,* 163 N. Y. Supp. 555, is a notable example of the few cases dealing with the subject, and it is authority for the rule that one of two or more

"indorsers of a note cannot have contribution from the others as cosureties for their proportional share of the amount paid by him on the note, without showing presentment and notice, since he cannot by paying the note, deprive the cosureties of their right to presentment and notice."

In that precedent Kistler, Douglas and Bennet, who were officers of the corporation maker, indorsed before delivery and for the accommodation of the maker. Bennet paid the two notes and sought contribution from Kistler and Douglas. In the course of the opinion the court said:

"There is no provision of law that authorizes, as respects cosuretyship indorsers, the omission to make presentment and give notice. The cosuretyship is a matter of agreement between or among the indorsers, which in no way affects the rights or duties of the holder of the note. Nor can one surety by paying the note deprive the other indorsing sureties of their right to presentment and notice of dishonor. Indorsers are relieved from liability, whether as ordinary indorsers or as cosureties, by the omission to make presentment and to give notice of dishonor, unless such requirements are excused."

In *Higgins* v. *Morrison,* 4 Dana (Ky.), 100, an action by one indorser against his coindorser for contribution, it was assumed that there must be notice of protest to a coindorser. In *Bowie* v. *Hume,* 13 App. Cas. D. C. 286, the court said:

"The notice of dishonor to each indorser was required in order to preserve the right of contribution as between them. Demand, protest and notice, however, may be waived, but to make such waiver effectual it must have been by all the indorsers interested in the question of contribution *inter sese.*"

In the note appended to *Owens* v. *Greenlee,* 9 A. L. R. 1189, the editor concludes thus:

"It is there (*Williams* v. *Paintsville National Bank,*
143 Ky. 781 (137 S. W. 535, Ann. Cas. 1912D, 350)
held that, under that act (Negotiable Instruments
Act), a joint indorser to whom alone notice of dis-
honor is given is not discharged by failure to give
notice to the other indorsers, and the court says that
if he would hold his coindorsers, he must give notice
to them. The Kentucky case is approved and fol-
lowed in *Eaves* v. *Keeton,* 196 Mo. App. 424 (193
S. W. 629), where the court, although not mention-
ing the right of contribution as between the coin-
dorsers, says, in a case involving joint indorsers, that
any indorser to whom notice of dishonor is not
given by the holder is discharged so far as such
holder is concerned, but the party who is notified is
thereby made liable to the holder, 'and is given the
right to protect himself by giving notice to those
parties to the note from whom, on his paying the
instrument he is entitled to reimbursement.' The
theory of these cases, that an indorser who has re-
ceived notice of dishonor must notify his coindorser,
who is not given notice by the holder of the instru-
ment, if he would preserve his right of contribu-
tion, is contrary to the holding in the reported case
(*Owens* v. *Greenlee*)."

The facts in *Hunter* v. *Harris,* 63 Or. 505 (127 Pac.
786), readily distinguish that precedent from the
instant case. Hunter told Hulse, the accommodated
maker, that he, Hunter, would sign the note if Harris
would; and Harris agreed to sign if Hunter would.
Hunter signed as a maker; he was an accommodation
maker. Hulse then took the note to Harris for his
signature, and, instead of signing his name on the
face of the note, Harris signed on the back, because
there was "no place on the face to sign it." Hunter
and Harris agreed that as between themselves they
would be makers. See *Lumbermen's National Bank*
v. *Campbell,* 61 Or. 123, 127 (121 Pac. 427); *Long* v.

*Gwin*, 202 Ala. 358 (80 South. 440). Moreover, the liability of Hunter to the holder was primary and absolute, and not secondary and contingent; and, although Harris stood in the position of an indorser as between himself and the holder, he stood in the position of a maker as between himself and Hunter, and the latter was in very truth a maker and as such was liable to the holder even though presentment and notice were omitted. Case and McKinnis signed as indorsers not only as to the holder but also as to the immediate parties. As between themselves and the holder, Case and McKinnis were conclusively presumed to occupy the position of indorsers; and as between themselves Case and McKinnis in very truth occupied the position of indorsers so far as their position on the note was concerned. They signed jointly, and each put his name down for his part, it is true, but it is also true that each put his name down for his part as an indorser and not as a maker or a guarantor. The question now to be answered is: Which is the better rule, the one which denies the necessity of notice, or the one which requires notice to the coindorser? The basis upon which is rested the rule dispensing with the necessity of notice is well expressed in *Owens* v. *Greenlee* as follows:

"There is no merit in this (the claim that an indorser is entitled to notice), because this action is not brought upon the drafts themselves, but is strictly a suit in equity, for reimbursement to plaintiff for his payment of the joint liability."

It must of course be conceded that the action for contribution is not brought upon the negotiable instrument. However, it cannot be denied that any right of contribution must spring out of some obli-

gation which was created by force of the contract of indorsement. It will be difficult successfully to contend that the action is one for reimbursement for the payment of a joint liability, if the defendant co-indorser was never legally liable to the holder. If both Case and McKinnis were legally liable to the bank at the time of the payment by Case, then of course Case could have contribution from McKinnis, because every essential element of the doctrine of contribution would be present, including the element of common liability. If both Case and McKinnis had been liable to the bank at the time of the payment by Case then there would have been a joint liability, and in that event payment by Case would have been payment of a joint liability. But the fact is that a joint liability was never brought into existence; nor, indeed, was a several liability brought into existence in favor of the holder and against McKinnis. In truth McKinnis was entirely discharged from all liability whatsoever on the note, and consequently when Case paid the bank he paid that for which McKinnis was not liable to the bank at all. The doctrine of contribution cannot be made applicable without doing violence to the rights which inured to McKinnis when he entered into the contract of indorsement. There is a vast difference between the position occupied by sureties on a bond, for example, where liability accrues upon the default of the principal, and the position occupied by indorsers on a note where liability does not accrue upon the default of the maker and cannot accrue until presentment is made or notice is given or waived. While there are some analogies between indorsers and sureties, "there are" as said in *Stephens* v.

*Monongahela National Bank,* 88 Pa. St. 157, 163 (32 Am. Rep. 438):

"some distinctions important to observe lest a principle, exclusively applicable to one, be perverted. For instance, without due demand and notice, at the maturity of a note, an indorser will be discharged— a surety continues liable upon his contract, though the creditor sleeps."

To hold that a coindorser can waive presentment and notice, pay, and then have contribution from another coindorser, is to hold that one can deprive the other of substantial rights belonging to him.

The rule which requires notice is the better rule when applied in the light of the construction placed upon section (107) of the negotiable instruments law by *Williams* v. *Paintsville National Bank,* 143 Ky. 781 (137 S. W. 535, Ann. Cas. 1912D, 350). Under this rule indorsers who by agreement have fixed the order or amount of their liability as between and among themselves may by giving notice preserve their own rights without in the slightest impairing any of the rights of the other indorsers. It must be remembered that we are dealing with negotiable instruments and that in a large measure they take the place of money in the commercial world; and for that reason their integrity must, whenever possible, be preserved. Suppose that A makes a note payable to the order of B; the note is by B indorsed to C and by the latter transferred to D; the note is then sold by D to joint indorsees 1, 2 and 3, who, being in need of funds, indorse in blank and sell the note to a bank. Before the maturity of the note, indorser 3 without the knowledge or consent of any of the other indorsers waives presentment and notice, and, after the expiration of the time

for making presentment and giving notice and with-
out the knowledge of the other indorsers, pays the
note. The maker is insolvent; indorsers B, C and
D are each amply able to respond. Indorser 3 was
amply able to pay. Indorsers 1 and 2 are persons
of small means, and when they indorsed in blank they
did so because they knew that if they should be
obliged to pay they could compel indorsers B, C and
D to reimburse them. Indorsers 1 and 2 lose their
right to call upon B, C or D unless notice of dis-
honor is given. The supposed case is not far-fetched,
but is one which may occur frequently under the rule
which dispenses with notice and permits one co-
indorser to waive before maturity, pay, and then
compel contribution from a coindorser who, because
not having been notified, did not notify prior in-
dorsers and thus lost all right to look to prior in-
dorsers for reimbursement; and the resulting loss to
indorsers 1 and 2 cannot be avoided unless the right
of contribution accorded to indorser 3 is qualified
by the application of equitable principles or by a rule
of negligence. But it must be remembered that this
is an action at law and not a suit in equity; and it
must also be remembered that to charge indorser 3
with negligence is to impose upon him the duty of
giving notice, because he could not be guilty of
negligence causing loss except by omission to give
notice to indorsers 1 and 2 in time for them to pre-
vent loss.

The rule which requires notice preserves to every
indorser every right attaching to an indorser and at
the same time enables one coindorser, who after pre-
sentment and notice or after presentment and waiver
of notice has paid the note, to compel another co-
indorser to pay his share. The mere fact that in-

dorsers are jointly liable or have agreed between themselves upon the order and amount of liability ought not to be enough to dispense with notice. When indorsers agree that each will put his name down for his part, meaning an equal share, they do no more than to agree that if each of them is made liable as an indorser then each, as between themselves, will pay an equal share. Each indorser ought to be entitled to insist upon his rights as an indorser, even as between themselves, unless the agreement made between themselves fixing the order and amount of their liability also provides that each shall pay his share, even though not bound by presentment and notice or waiver, if any or part of them is bound and compelled to pay the holder.

The judgment as to the United States National Bank notes is affirmed; but as to the Smith note the judgment is reversed. Although the present record does not disclose a situation rendering McKinnis liable, and although we are not advised as to whether or not the plaintiff can make out a case against McKinnis on the ground of waiver or otherwise, still it is possible that McKinnis waived presentment and notice; and for that reason the cause so far as it concerns the Smith note is remanded for such further proceedings as may be proper.

Affirmed as to the United States National Bank Notes. Reversed and Remanded as to the Smith Note. Costs Retaxed.